STATE OF MAINE

*vs.*

INTOXICATING LIQUORS, TARBOX EXPRESS COMPANY Claimant & Appellant.

Androscoggin.    Opinion February 7, 1907.

*Exceptions. Intoxicating Liquors. Seizure. United States Supreme Court Decisions. Interstate Commerce. Common Carriers. Shipments. Delivery to Consignee. Fictitious Consignee. " Wilson Act."*

1.  When a case is heard by a presiding Justice, without a jury, exceptions are not allowable, unless they have been expressly reserved. But in the absence of anything in the bill of exceptions to show the contrary, the certificate of the presiding Justice that the exceptions are " allowed " is conclusive as to their being rightfully allowed in this respect.

2.  The decisions of the Supreme Court of the United States relating to the interpretation of the federal constitution and federal statutes are conclusive upon state courts.

3.  By the decisions of the Federal Supreme Court, it is settled that intoxicating liquors are articles of commerce, and as such, while being transported from state to state, are within the protection of that clause in the

constitution of the United States which gives to Congress the power "to° regulate commerce with foreign nations, and among the several states, and with the Indian tribes," and thus are subject to the exclusive jurisdiction of Congress.

4.· The act of Congress of August 8, 1890, called the Wilson Act, was a regulation of interstate commerce as related to the transportation of intoxicating liquors.

5. This court has heretofore *held*, under its own construction of the federal constitution and the Wilson Act, that when actual transportation of intoxicating liquors had been entirely completed, and when the liquors had not only arrived at the place of their destination, but had been moved by the carrier from the car to its freight house, there to await the order of the shipper, they had arrived in the State within the meaning of the Wilson Act, so as to be subject to the laws of this State.

6. But the Federal Supreme Court in its decision in the case of *Heymann* v. *Southern Railway Co.*, 203 U. S. 270, announced December 3, 1906, has authoritatively settled the following doctrines :

· (a) Prior to the Wilson Act, in case of interstate shipment of intoxicating liquors, delivery and sale in the original package was necessary to terminate interstate commerce, so far as the police regulations of the states were concerned.

(b) The Wilson Act did not delegate to the states the right to forbid the transportation of merchandise from one state to another, but "it merely provided in the case of intoxicating liquors that such merchandise, when transported from one state to another, should lose its character as interstate commerce upon completion of delivery under the contract of interstate shipment, and before sale in the original package."

(c) The state statute must permit the delivery of the liquors to the party to whom they were consigned within the state, but after such delivery, the state has power to prevent the sale of the liquors, even in the original package.

(d) The question of whether the liability of the carrier, as such, has ceased, under the state laws, and has become that of a warehouseman, is immaterial.

(e) But the court reserved its opinion upon the question whether if the consignee, after notice and full opportunity to receive the liquors, designedly leaves them in the hands of the carrier for an unreasonable time, they should not be held to have come under the provisions of the Wilson Act, because constructively delivered.

7. Under the authority of the decision of the Federal Supreme Court in the Heymann case, this court is compelled to overrule its decision in *State* v. *Intoxicating Liquors*, 95 Maine, 140, and now to hold that intoxicating liquors, transported from another state to this by a common carrier, are not subject to seizure by virtue of the provisions of the prohibitory liquor statute of this State, until there has been a delivery to the consignee.

8.   Whether they may be so seized, as constructively delivered, in case the consignee, after notice, designedly leaves them in the hands of the carrier for an unreasonable time, is not considered, as the facts in these cases do not present that question.

9.   The rule is the same whether the consignee was known to the carrier or not, and whether the name of the consignee was fictitious or not.

*State* v. *Intoxicating Liquors*, 95 Maine, 140, overruled.

On exceptions by claimant.   Sustained.

Three cases of search and seizure under the provisions of Revised Statutes, chapter 29, section 49, originating in the Lewiston Municipal Court, Androscoggin County.   In each of these cases, certain intoxicating liquors were seized and taken from the possession of the Tarbox Express Company, a common carrier, while alleged to be still in transit.   The liquors seized had been transported by the Tarbox Express Company by continuous shipment from Boston Mass., to Lewiston, Maine.   Under the provisions of section 48 of the aforesaid chapter, the seizures were made by the officer before the making of the complaints and the issuing of the warrants.

In the first case as numbered on the docket, the complaint and warrant are as follows:

"STATE OF MAINE.

"Androscoggin, ss.   To the acting Clerk of our Municipal Court for the City of Lewiston, in the County of Androscoggin :

"A. B. Howard of Auburn in said County, and competent to be a witness in civil suits, on the Twenty-fourth day of August in the year of our Lord one thousand nine hundred and six in behalf of said State, on oath, complains that he believes that on the twenty-fourth day of August in said year, at said Lewiston, in said County, intoxicating liquors were unlawfully kept and deposited by some person to your complainant unknown, at the freight depot of the Tarbox Express Company situated on the east side of Park Street, in said Lewiston, said person to your complainant unknown, not being then and there authorized by law to sell liquors within said City of Lewiston, and that said liquors then and there were intended for sale by some person to your complainant unknown, in this State in violation of law, against the peace of said State, and contrary to the forms of the statute in such cases made and provided.

" And the said A. B. Howard on oath, further complains, that he, the said A. B. Howard on the Twenty-fourth day of August A. D. 1906 being then and there an officer, to wit : a Deputy Enforcement Commissioner for said State, duly qualified and authorized by law to seize intoxicating liquors kept and deposited for unlawful sale, and the vessels containing them, by virtue of a warrant therefor, issued in conformity with the provisions of law, did find upon the above described premises twelve bottles each containing one quart of whiskey marked M. Supowitz, 274 Main St., Lewiston, Me. intoxicating liquors as aforesaid, and vessels containing the same then and there kept, deposited and intended for unlawful sale as aforesaid, within this State, by some person to your complainant unknown, and did then and there by virtue of his authority as a Deputy Enforcement Commissioner for said State, as aforesaid, seize the above described intoxicating liquors and the vessels containing the same, to be kept in some safe place for a reasonable time, and hath since kept, and does still keep, the said intoxicating liquors and vessels to procure a warrant to seize the same.

" He therefore prays that due process be issued to seize said intoxicating liquors and vessels, and them safely keep until final action and decision be had thereon.

"A. B. HOWARD."

" Androscoggin, ss.   On the twenty-fourth day of August aforesaid, the said A. B. Howard made oath that the above complaint signed by him is true.

"Before me,
"A. K. P. KNOWLTON, Acting Clerk."

" STATE OF MAINE.

" Androscoggin, ss.   To the Sheriff of our said County of Androscoggin, or either of his Deputies, or the Constables of either of the Towns or Cities within said County, or to any or either of them, or to any Deputy Enforcement Commissioner for said State, Greeting :

" In the name of the State of Maine, you are commanded to seize the intoxicating liquors and vessels in which they are contained,

named in the foregoing complaint, of said A. B. Howard and now in his custody, as set forth in said complaint, which is expressly referred to as a part of this warrant, and safely keep the same until final action and decision be had thereon.

"Witness, ADELBERT D. CORNISH, Esquire, Judge of our said Court, at Lewiston aforesaid, this twenty-fourth day of August in the year of our Lord one thousand nine hundred and six.

"A. K. P. KNOWLTON, Acting Clerk."

The complaints and warrants in the other two cases were of the same general tenor with the necessary changes in names and dates, etc.

In each case the liquors were properly libelled as provided by R. S., chapter 29, section 50, and on the return days of the libels the said Tarbox Express Company appeared before the Lewiston Municipal Court and claimed the liquors. In each case its claim was denied and the liquors in each case were adjudged forfeited as provided by R. S., chapter 29, section 51. The claimant, in each case, then appealed to the Supreme Judicial Court as provided by said section 51.

After the hearing in the Supreme Judicial Court, the presiding Justice ruled in each case as a matter of law that the liquors should be forfeited. To these rulings the claimant took exceptions.

The case fully appears in the opinion.

*Ralph W. Crockett,* County Attorney, for the State.
*McGillicuddy & Morey,* for claimant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

SAVAGE, J. These are three cases of claims by a common carrier for intoxicating liquors seized and taken from its possession, while alleged still to be in transit, and within the protection of the inter-state commerce provision of the Constitution of the United States. The liquors seized were properly libelled. The claimant appeared before the Municipal Court. Its claims were denied, the liquors in each case adjudged forfeited, and the claimant appealed to the

Supreme Judicial Court.   After a hearing in that court the presiding Justice ruled in each case as a matter of law that the liquors should be forfeited, and the claimant alleged exceptions which were regularly allowed.

At the outset, the attorney for the State claims that the exceptions were not allowable, should not have been allowed, and should now be dismissed, because, as he says, the cases were heard by the presiding Justice without the intervention of a jury, and that the right of exceptions was not expressly reserved.   It is true that in such cases exceptions are not properly allowable, and if allowed, should be dismissed when the fact properly appears.   *Reed* v. *Reed,* 70 Maine, 504 ; *Frank* v. *Mallett,* 92 Maine, 77.   The trouble in this case, however, is that the fact is not shown to be as claimed by the State's attorney.   We cannot travel out of the bill of exceptions, and this bill is silent upon the matter.   The attorney argues that it must appear affirmatively from the bill that the right of exception was expressly reserved before the hearing.   We do not think so. We hold that in the absence of anything in the bill to show the contrary, the certificate of the presiding Justice that the exceptions are " allowed " is conclusive as to their being rightfully allowed in this respect.   *Dunn* v. *Auburn Electric Motor Company,* 92 Maine, 165 These bills of exceptions, therefore, are properly open to consideration.

The presiding Justice made no specific findings of fact, but his ruling as a matter of law necessarily involved certain findings of fact, which must be deemed, upon exceptions, to be true.   He must have found that the liquors seized were intoxicating, and that they were intended for sale in violation of law in this State.   But the undisputed testimony, which is made a part of the bill of exceptions, shows certain other facts, which, in considering the exceptions, we must deem were true, and that they were so found by the Justice, because his ruling was essentially based upon their truth.

In the first place, it appears that the claimant is a common carrier of merchandise, and that each of the packages seized was transported by the claimant by continuous shipment from Boston, Massachusetts, to Lewiston, in this State.

I.  In the first case, as numbered on the docket, the package was a C. O. D. shipment, marked "M. Supovitz, No. 274 Main Street, Lewiston, Maine." Max Supovitz testified that he lived at 274 Main Street, Lewiston, and was the only one of the name living there; that he had not ordered the liquors and did not know to whom they belonged. The liquors were brought by the claimant over the Maine Central Railroad line to Lewiston, and were taken by it from the railroad freight shed to its office on Park Street, where they were shortly after seized by the officer.

II.  In the next case, the liquors were marked "H. E. Perkins, Lewiston, Maine." From the evidence, we think it may be assumed that the name was fictitious. The evidence shows that the package was never in the claimant's office, but was seized and taken from the claimant's delivery wagon, apparently either while going out to make delivery or returning from an unsuccessful attempt to make delivery. And as we shall see later it is immaterial which. Whether the driver knew who was the real consignee does not appear, but that we think is also immaterial in this case.

III.  The third case is that of a C. O. D. shipment. The package was marked "J. P. Sutton, Auburn, Maine," and was seized from the claimant's wagon while being taken to its office. The evidence strongly tends to show that Mr. Sutton did not order the liquors, but that they were ordered by another person in his name, without his knowledge.

It is well settled that intoxicating liquors are articles of commerce, and as such, while being transported from state to state, are within the protection of that clause in the constitution of the United States which gives to Congress the power " to regulate commerce with foreign nations, and among the several states, and with the Indian tribes," and thus are subject to the exclusive jurisdiction of Congress. *Bowman* v. *Chicago & Northwestern Ry. Co.*, 125 U. S. 465; *Leisy* v. *Hardin*, 135 U. S. 100; *State* v. *Burns*, 82 Maine, 558; *State* v. *Intoxicating Liquors*, 83 Maine, 158. And although a state may constitutionally prohibit the sale of intoxicating liquor within its borders, *Mugler* v. *Kansas*, 123 U. S. 623, such prohibi-

tion could not, prior to the Wilson Act, so called, hereafter referred to, constitutionally extend to a sale of them by the importer while in the original package. *Leisy* v. *Hardin*, 135 U. S. 100 ; *State* v. *Burns*, 82 Maine, 558 ; *State* v. *Intoxicating Liquors*, 83 Maine, 158.

At this stage of the decisions, the act of Congress of August 8, 1890, called the Wilson Act, was passed, which provided that all intoxicating liquors " transported into any state or territory, or remaining therein for use, consumption, sale, or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

Since the enactment of the Wilson Act, the questions as to what its effect was, and at what point of time there is an " arrival " of intoxicating liquors in a state, within the meaning of that Act, so as to subject them to the police powers of a state, have several times been considered by the Federal Supreme Court, as well as by this court. In re *Rahrer*, 140 U. S. 545, the Wilson Act was held to be constitutional, and it was held that after its passage, intoxicating liquors introduced into a state from another state, whether in the original package or otherwise, were subject to the police powers of the State. In *Rhodes* v. *Iowa*, 170 U. S. 412, (1897) an interstate shipment of intoxicating liquors had reached the point of destination and had been unloaded from the railroad car to the platform. A station agent of the railroad company, removed the liquors from the platform to the freight warehouse of the railroad company, a few feet away. For this act he was prosecuted under the Iowa statute which made it unlawful for any person in the employ of a common carrier, or for any other person, to " transport or convey between points, or from one place to another within this State for any other person or persons or corporation, any intoxicating liquors," without first having the certificate which the statute provided for. The Federal Supreme Court held, on writ of error, that the removal of such liquors from the platform to the freight warehouse was a part of the interstate

commerce transportation, and overruled the contention of the State of Iowa that the liquors became subject to its police powers by virtue of the Wilson Act, as soon as they came within its geographical limits. In the opinion the court said passim, " The sole question presented for consideration is whether the statute of the State of Iowa can be held to apply to the box in question whilst it was in transit from its point of shipment, Dallas, Illinois, to its delivery to the consignee at the point to which it was consigned. . . . . Did the act of Congress referred to (the Wilson Act) operate to attach the legislation of the State of Iowa to the goods in question the moment they reached the state line, and before the completion of the act of transportation, by arriving at the point of consignment and the delivery there to the consignee is then the pivotal question. . . . . We think that interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the State to attach to an interstate commerce shipment whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee."

In *State* v. *Intoxicating Liquors*, 95 Maine, 140, (1901) this court was called upon to interpret the Wilson Act. In that case there was an interstate shipment of intoxicating liquors over connecting railroads, consigned to the shippers. They arrived at the point of destination on the morning of one day, were transferred to the railroad company's freight house, where they were seized by the officers on the afternoon of the next day. There had been no delivery of the liquors and no notice given to any one of their arrival. The railroad company filed a claim for the liquors, on the ground that they were within the protection of the interstate commerce provision of the federal constitution, when seized, and that it was entitled to their possession until delivery. The claimant relied upon *Rhodes* v. *Iowa*, supra, as settling the question involved, favorably to its contention.

But this court after examination of the facts reported in the Rhodes case, and of the general line of reasoning adopted in the opinion of the Federal Supreme Court, were of opinion that the question whether the liquors were so protected *until delivery at the*

*point of destination to the consignee*, was not necessarily involved in the Federal Court's decision.   We said: — "If the act of moving the package from the platform to the freight house was a part of the interstate commerce transportation, as the court held it was, and the transportation was not consummated until the package had been moved to and deposited within the freight house, so that the liquors had not arrived within the State, until that act had been performed, then the Iowa statute could not apply to any part of such transportation, and it was unnecessary to a decision of the point involved to hold that such transportation was not completed until delivery to the consignee."   And we held in the case then before us that when the actual transportation had been entirely completed, and when the liquors had not only arrived at the place of their destination, but had been moved by the carrier from the car to its freight house, there to await the order of the shipper, they had arrived in the State within the meaning of the Wilson Act, so as to be subject to our laws.

And we took occasion in that case to say :   " We fully recognize that the question whether a state statute is in contravention of any provision of the federal constitution is for the final determination of the Federal Supreme Court, and that its decision, when the question is presented, is conclusive.   But we do not consider it obligatory upon this court to hold, against our own judgment, that a statute of our State is in violation of that constitution, until it has been so decided, even if .it may be possible, judging, from certain remarks in that court's opinion, that our judgment may be overruled by that tribunal."

But since the cases at bar were heard at nisi prius, the Federal Supreme Court has announced an authoritative decision upon the precise point involved.   In the case of *Heymann* v. *Southern Railway Co.*, 203 U. S. 270, announced December 3, 1906, intoxicating liquors were shipped over the defendant's railroad from Augusta, Georgia, to Charleston, South Carolina, where they were unloaded by the railroad company from the car into its warehouse, ready for delivery.   Shortly after the liquors were so placed, they were seized and taken from its possession by constables asserting their right to do

so under the authority of what is known as the dispensary law of South Carolina. The State Court held as we held in 95 Maine, 140, supra, that the interstate transportation of the goods ended when they were placed in the warehouse, and that then the goods ceased to be under the shelter of the interstate commerce clause of the constitution. The decision was based upon the conclusion that goods warehoused under the circumstances stated must be considered as having arrived within the meaning of the Wilson Act. The Georgia Court also stated that they deemed that the expressions to the contrary effect in *Rhodes* v. *Iowa* " were not binding, as they were merely obiter." But the Federal Supreme Court reversed the judgment of the State Court, and held, for reasons stated, that the Rhodes case " necessarily involved deciding the meaning of the word arrival in the Wilson Act, and that this required an ascertainment of when goods shipped from one state to another, generally speaking, ceased to be controlled by the interstate commerce clause of the constitution." And the conclusion reached and stated by the Federal Supreme Court in *Heymann* v. *Southern Railway Co.*, supra, may be summarized as follows :

1. The elementary and long settled doctrine is reiterated that, prior to the Wilson Act, in case of interstate shipments, "delivery and sale in the original package was necessary to terminate interstate commerce, so far as the police regulations of the states were concerned."

2. That the Wilson Act manifested no attempt on the part of Congress to delegate to the states the right to forbid the transportation of merchandise from one state to another, " since it merely provided, in the case of intoxicating liquors, that such merchandise, when transported from one state to another, should lose its character as interstate commerce upon completion of delivery under the contract of interstate shipment, and before sale in the original package."

3. That the State statute must permit the delivery of the liquors to the party to whom they were consigned within the State, but that, after such delivery, the State has power to prevent the sale of the liquors, even in the original package.

4. That the question whether the liability of the carrier, as such, has ceased, under the state laws, and has become that of a ware-

houseman, is immaterial. *Heymann* v. *Southern Railway Co.*, supra; In re *Rahrer*, 140 U. S. 545 ; *Vance* v. *W. A. Vandercook Co. No. 1*, 170 U. S. 438 ; *American Express Company* v. *Iowa*, 196 U. S. 133 ; *Foppiano* v. *Speed*, 199 U. S. 501.

5.  But in stating these principles, the court in the Heymann case reserved its opinion upon one point in the following words :—" Of course we are not called upon in this case, and do not decide, if goods of the character referred to in the Wilson Act, moving in interstate commerce, arrive at the point of destination, and, after notice and full opportunity to receive them, are designedly left in the hands of the carrier for an unreasonable time, that such conduct on the part of the consignee might not justify, if affirmatively alleged and proven, the holding that goods so dealt with have come under the operation of the Wilson Act, because constructively delivered. We say we are not called upon to consider this question, for the reason that no facts are shown by the record justifying passing on such a proposition." But the point thus suggested by the Federal Court, if tenable, is unimportant in the cases at bar, since the facts in these cases do not bring them within such a rule.

This decision of the Federal Supreme Court, upon this question of the interpretation and application of the interstate commerce clause of the Federal Constitution, and of the Act of Congress, called the Wilson Act, is conclusive and binding upon this Court. *State* v. *Burns*, 82 Maine, 558 ; *State* v. *Intoxicating Liquors*, 95 Maine, 140. Under the authority of this decision, we are bound to say that though interstate transportation may end before delivery, interstate commerce does not end before delivery to the consignee, either actual, or at least constructive within the principle left undecided by the Federal Court. And we cannot see that it makes any difference in principle whether the consignee was known to the carrier or not, or even if the name of the consignee was fictitious.

There was no delivery of liquors either actual or constructive, to consignee in any of the cases at bar. Hence these liquors had not become liable to seizure and forfeiture under our statute.

It may be that in part, if not in all of these cases, it would have been our duty to rule favorably to its claimant, on the ground that

at time of seizure, actual transit was not ended. *State* v. *Intoxicating Liquors*, 101 Maine, 430; *State* v. *Intoxicating Liquors*, 102 Maine, 206. But we have thought it expedient, in view of the decision in the Heymann case, to place our decision upon the ground which must hereafter control in all similar cases.

*Exceptions in each case sustained.*