ROBERT R. JORDAN *vs.* LEILA C. GAINES.

Cumberland.        Opinion, October 7, 1939.

*Nunzi F. Napolitano*, for plaintiff.
*Richard S. Chapman*, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MAN-
SER, JJ.

HUDSON, J.    Trover to recover damages for the alleged conver-
sion of six cows. The defendant, a State Humane agent and an
agent of the Pine Tree Humane Society, pleaded the general issue
and, by way of brief statement, that "she was justified in taking
the chattels . . . by virtue of the Revised Statutes of the State of
Maine and acts amendatory thereto."

Involved are Sections 63 and 67 of Chapter 135, R. S. 1930, the
latter as amended by Chapter 114 of the Public Laws of 1931. The
presiding Justice adjudged them constitutional and on motion di-
rected a verdict for the defendant, to which ruling the exceptions
now before us were taken.

The exceptions clearly show that the only question brought up is
the constitutionality of these statutes and preclude our considera-
tion and determination of other matters argued both by the plain-
tiff's and the defendant's counsel. "We cannot travel out of the
bill of exceptions. . . ." *State* v. *Intox. Liquors*, 102 Me., 385, 390,
67 A., 312; *McKown* v. *Powers*, 86 Me., 291, 29 A., 1079; *Verona*
v. *Bridges*, 98 Me., 491, 57 A., 797; *Lenfest* v. *Robbins*, 101 Me.,
176, 63 A., 729; *Mencher* v. *Waterman*, 125 Me., 178, 132 A., 132;
*Frost, Adm'r* v. *C. W. Cone Taxi & Livery Company*, 126 Me.,
409, 139 A., 227; *Hamilton* v. *Wilcox et al.*, 126 Me., 529, 140 A.,
201.

Section 67 as amended reads as follows:

"Any person may take charge of an animal whose owner
has cruelly abandoned it, or cruelly fails to take care of and
provide for it, and may furnish the same with proper shelter,
nourishment, and care at the owner's expense, and have a lien

thereon for the same; and may enforce said lien in the manner provided for in section sixty-three of this chapter. . . ."

Section 63 reads:

"Persons or corporations having such lien, may sell such animals at public auction, in the town or city where they were found or are detained, after three days' written notice to the party claiming or owning the same; or if such party cannot be found, by publishing notice of the time and place of sale for three successive days in any daily, or once in any weekly newspaper printed in the county where such animals were found or are detained, and from the proceeds of such sale, may deduct all costs, charges, and expenses, and a reasonable compensation for trouble, and shall hold the balance, if any, for, and pay over the same, on demand, to the parties owning said animals, or to the legal representatives of such parties."

The plaintiff contends that these statutes contravene the Fourteenth Amendment of the Federal Constitution and Article I, Section 6 of the State of Maine Constitution. The Fourteenth Amendment in part provides that no state shall "deprive any person of life, liberty, or property, without due process of law. . . ," while Section 6 of Article I of our State Constitution protects the accused against deprivation "of his life, liberty, property or privileges, but by judgment of his peers, or by the law of the land."

The phrases "due process of law" and "the law of the land" are identical in meaning. *Randall* v. *Patch*, 118 Me., 303, 305, 108 A., 97; *Bennett* v. *Davis*, 90 Me., 102, 105, 37 A., 864; *Eames* v. *Savage*, 77 Me., 212, 220; *State of Maine* v. *Doherty*, 60 Me., 504, 509; *State* v. *Knight*, 43 Me., 11, 122. They are of equivalent import and interchangeable. *Re: John M. Stanley*, 133 Me., 91, 95, 174 A., 93.

The question then is whether or not these sections of the statute when complied with effect deprivation of one's property without due process of law.

While other grounds of unconstitutionality are relied upon by the plaintiff, only one needs consideration, viz: failure of provision for notice of the taking and opportunity for hearing. "Notice and

opportunity for hearing are of the essence of due process of law." *Randall* v. *Patch*, supra, 118 Me., on page 305, 108 A., on page 98; *Re: John M. Stanley*, supra, 133 Me., on page 95, 174 A., 93; *York Harbor Village Corporation* v. *Fred H. Libby et al.*, 126 Me., 537, 539, 140 A., 382. The taking of property without notice and opportunity for hearing violates both the Fourteenth Amendment and Section 6 of Article I of the Constitution of Maine, unless the taking constitutes a valid exercise of the police power.

The due process clause does not prevent *proper* exercise of the police power of the state. *Boston & Maine R. R. Co.* v. *County Commissioners*, 79 Me., 386, 10 A., 113; *State* v. *Rogers*, 95 Me., 94, 49 A., 564; *State* v. *Robb*, 100 Me., 180, 60 A., 874; *State* v. *Frederickson*, 101 Me., 37, 63 A., 535; *Opinions of Justices*, 103 Me., 506, 69 A., 627; *State* v. *Mayo*, 106 Me., 62, 75 A., 295; *State* v. *Phillips*, 107 Me., 249, 78 A., 283; *State of Maine* v. *King*, 135 Me., 5, 188 A., 775.

Speaking of the police power, this Court said in *York Harbor Village Corporation* v. *Libby et al.*, supra, 126 Me., on page 540, 140 A., on page 385:

"It is not the offspring of constitutions. It is older than any written constitution. It is the power which the states have not surrendered to the nation, and which by the Tenth Amendment were expressly reserved 'to the states respectively or to the people.'

Limitations expressed or necessarily implied in the Federal Constitution are the frontiers which the Police Power cannot pass. Within those frontiers its authority is recognized and respected by the constitution and given effect by all courts."

Also, as stated in the last cited case, "private property is held subject to the implied condition that it shall not be used for any purpose that injures or impairs the public health, morals, safety, order or welfare." One may use his private property in a way so detrimental to the rights of the public with relation to "public health, morals, safety, order or welfare" as to permit legislative deprivation of such property without compensation. In cases of extreme and urgent necessity, as in conflagrations or epidemics,

such property may be destroyed under authority of the police power without notice or hearing. *Randall* v. *Patch*, supra.

"If the use is actually and substantially an injury or impairment of the public interest in any of its aspects above enumerated a regulating or restraining statute or ordinance conforming thereto, if itself reasonable and not merely arbitrary, and not violative of any constitutional limitation, is valid. It is not a deprivation of property which the constitution forbids, but an enforcement of a condition subject to which property is held." *Village Corporation* v. *Libby et al.*, supra, pages 540 and 541.

Whether a particular statute has validity as a proper exercise of the police power depends on whether or not it "extends only to such measures as are reasonable," but then the police regulation "must be reasonable under all circumstances. Too much significance cannot be given to the word 'reasonable' in considering the scope of the police power in a constitutional sense, for the test used to determine the constitutionality of the means employed by the legislature is to inquire whether the restrictions it imposes on rights secured to individuals by the Bill of Rights are unreasonable, and not whether it imposes any restrictions on such rights. . . . The validity of a police regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable or arbitrary and whether it is really designed to accomplish a purpose properly falling within the scope of the police power." 11 Am. Jur., Section 302, pages 1073, 1074, and 1075.

In *Loesch* v. *Koehler*, 41 N. E., 326 (Indiana), cited with approval in *Randall* v. *Patch*, supra, it was held that a statute authorizing certain officers to kill any animal neglected or abandoned and which, in the opinion of three reputable citizens, is injured or diseased past recovery or by which is has become useless, is invalid so far as it authorizes the killing, without any notice to the owner of the examination as to its condition. Also see *King* v. *Hayes*, 80 Me., 206, 13 A., 882.

In 12 Am. Jur., Section 683, on page 364, the *Loesch* case and *Randall* v. *Patch*, supra, are cited as authority for the statement that "Where animals are destroyed under humanitarian statutes

providing for the destruction of abandoned or disabled animals, notice and hearing are necessary." Then this is added: "The same rule applies to a lien created on the animals," citing *Jenks* v. *Stump*, 93 Pac., 17 (Colorado). In the *Jenks* case, the statute provided that:

"Any officer or agent of the State Humane Society may lawfully take charge of any animal found abandoned, neglected or cruelly treated, and shall thereupon give notice thereof to the owner, if known, and may care and provide for such animal until the owner shall take charge of the same, and the expense of such care and provision shall be a charge against the owner of such animal, and collectible from such owner by said Humane Society in an action therefor."

In the following section it was provided that:

"When said Humane Society shall provide neglected and abandoned animals with proper food, shelter and care, it may detain such animals until the expense of such food, shelter and care is paid, and shall have a lien upon such animals therefor."

It will be noted that the Colorado statute did provide for notice of the taking to the owner, while our statutes simply provide for notice before the sale at public auction. The difference in the time of giving the notice is of concern to the owner. Where it is given immediately after the taking, he may then proceed to regain his property before expenses of maintenance are incurred which may exceed the value of the animals taken.

With reference to the claimed validity of the Colorado statute under the police power, the Court said:

"The distinction in all such cases seems to be whether public necessity demands summary action, and, when it does not, notice must be given to the owner of the property and an opportunity be given, before some competent tribunal, to determine the truth of the allegations in each case, before the same is taken and before any lien is created upon it, and before it can be sold."

In 12 Am. Jur., Section 683, *supra*, it is stated:

"The necessity of notice and hearing depends upon the purpose for which animals are destroyed. Where the destruction is based upon the presence of a contagious or infectious disease and is for the purposes of preventing the spread of the disease and for protecting health, the destruction without a prior hearing has been sustained as not violating the due process guaranty."

"But the grant of power to an officer of a humane society to take charge of any abandoned or mistreated animals, to provide them with food, and to detain them until the expenses are paid, without restricting the authority of the officer to cases of emergency or public necessity, and without providing any notice to the owner or an opportunity for hearing, has been held to be unconstitutional as permitting a deprivation of property without due notice." 2 Am. Jur., Section 165, page 815.

"No statute can confer such authority that does not give the owner a right to be heard in a judicial or other similar proceeding and that does not make provision for just compensation for the value thereof." 3 C. J. S., Section 83, page 1198.

It is urged by counsel for the defendant that the statutes we are considering do not provide for the destruction of the property. That is true, but it does permit the taking of one's property without notice and opportunity of hearing and the later sale of the property at public auction. By such sale the owner is as much deprived of his property as though it were destroyed, and we cannot see why, if notice and an opportunity for hearing are required in case of destruction, where there is no urgent necessity for summary action, it is not as much required in case of the sale of such property. Deprivation to the owner is as much effected in the one instance as in the other.

We feel that the rule as indicated in *Randall* v. *Patch*, supra, is and should be that it is only in cases of urgent necessity in the interest of society's right of self-defense that private property may be taken and destroyed or sold without notice and opportunity of a hearing. As this Court in the *Randall* case, *supra*, held that the

statute then under consideration (which did not provide for notice or hearing) was unconstitutional because it contravened an explicit constitutional mandate, so now we arrive at the same conclusion as to the validity of said Sections 63 and 67, and pronounce them unconstitutional.

*Exceptions sustained.*