STATE POLICE DEPARTMENT *v*. HARGRAVE D/B/A
HARGRAVE SECRET SERVICE.

[No. 20,573. Filed May 27, 1968. No petition for rehearing filed.]

*John J. Dillon,* Attorney General, and *John T. Carmody,* Deputy Attorney General, for appellants.

*Richard L. Brown, Clifford M. DeWitt,* and *Butler, Brown, Hahn & DeWitt,* of Indianapolis, for appellees.

COOPER, J.—This action comes to us from the Superior Court of Marion County, Room Number 5, wherein the Appellees, George E. Hargrave, d/b/a Hargrave Secret Service, and Delbert C. Nugent, an employee of Hargrave, as individuals and as members of a class, brought an action for declaratory judgment against the State Police Department of Indiana and Robert A. O'Neal, as the Superintendent thereof. The Plaintiffs' complaint prayed alternatively that the Acts of 1965, Ch. 350, Sec. 7, the same being Burns' Sec. 42-1223(a) which establishes a registration fee for unlicensed employees assisting a private detective in the conduct of his business, and the Acts of 1961, Ch. 163, Secs. 2, 11, and 17, the same being Burns' Sec. 42-1208, as amended by the Acts of 1965, Ch. 162, Sec. 1, which define a private detective business and the right to employ unlicensed assistants therein be declared uncon-

stitutional as being indefinite, vague, and uncertain, and as creating an artificial classification, or alternately, that said Acts be so interpreted as to exclude all those employees of Hargrave Secret Service not used in investigative work from the classification of unlicensed employees.

The defendants filed an affirmative answer as well as an answer admitting and denying, pursuant to Rule 1-3 of the Rules of the Supreme Court. After the issues were thus joined, the cause was submitted to the court for trial without the intervention of a jury.

The Court made the following entry and judgment:

"Come now the parties, and by counsel, and this cause being at issue is submitted to the Court for trial without the intervention of a jury, and the parties stipulate the following in open Court:

"1. That rhetorical paragraph 3 of Legal Paragraph I of plaintiff's complaint be amended in that reference be made to Sections 2, 11 and 17 specifically of said Act of 1961.

"2. That rhetorical paragraph 4 of Legal Paragraph I of plaintiff's complaint be amended to refer only to Acts of 1965, Chapter 350, Section 7, entitled 'An Act Fixing Fees, Penalties, Charges, Rates and Moneys Receivable by the State, Regulating Boards, Agencies, Departments, Bureaus, and Commissions in the Exercise of the Regulatory Police Powers of the State, and Repealing all Laws in Conflict.'

"3. That the court may consider the entire Act known as the 'Detective License Law,' Acts of 1961, Chapter 163, Section 1, et seq, and all amendments thereto in order to make its finding upon the issues herein.

"4. That all exhibits of the parties be admitted by agreement of the parties without objection.

"And the Court, having heard the witnesses, and further evidence and the argument of counsel, and being duly advised in the premises, finds:

"(a) That a genuine controversy exists as to the rights and obligations of plaintiffs as to payment of fees under the aforesaid statutes of the State of Indiana and the right of the defendant State Police Department to regulate the affairs of the plaintiffs as concerns plaintiff's Hargraves employees hired for security guard purposes.

"(b) The Court further finds that plaintiff's Hargrave's employees engaged and employed solely as security guards, places plaintiff's Hargrave security guard division in that same class of business as those persons or corporations who operate industrial plant guard service business and persons or corporations who provide their own personal industrial plant guard service for their own plant.

"(c) The Court further finds that an industrial plant comprises the fixtures, tools, machines, merchandise and apparatus which are necessary to carry on a trade or business, or may be defined as the organized physical equipment to produce any desired result for any department, or branch of art occupation, or business conducted as a means of livelihood or for profit.

"(d) The Court further finds that plant security means the protection or personal security of the aforedefined industrial plant and its premises from any harm, including but not limited to trespassers or from persons who would injure, destroy or take the property from the aforesaid premises without right or permission of the owner thereof.

"(e) The Court further finds that those employees of plaintiff Hargrave who are hired and work solely as security guards are not unlicensed employees who assist the plaintiff in that portion of his business as a private detective, that is conducted in the State of Indiana.

"(f) The Court further finds that plaintiff Hargrave furnishes such security guards for hire solely to industrial plants for plant security and not as persons engaged in the private detective business, and that such security guard service is separable and divisible from the private detective service operated by the plaintiff.

"(g) The Court further finds that the application of Indiana Acts 1965, Chapter 350, Section 7, Burns' Indiana Annotated Statutes, Section 42-1223 (a) Detective License Fees to plaintiff's Hargrave operation of a security guard service is invalid, unlawful and discriminatory in the light of Acts 1965, Chapter 162, entitled 'An Act to Amend the Detective License Law,' which amendment adds the proviso to Acts 1961, Chapter 163, Section 2, Burns' 42-1208, 'Provided that the furnishing of a guard or guards for hire solely to industrial plants for plant security shall not be considered as private detective business.

"(h) The Court further finds that the language in Acts 1961, Chapter 163, Section 2, as amended by Acts 1965, Chapter 162, 'Provided, that the furnishing of a guard or

guards for hire solely to industrial plants for plant security shall not be considered as private detective business' does not mean persons engaged only in the business of industrial plant security, but means that if any individual employee of a business is engaged in industrial plant or security guard service—that particular individual, (guard) is not in the private detective business.

"(i) The Court further finds that the statutes as set out in plaintiff's complaint are constitutional and valid, but that the interpretation and application of the Indiana State Police Department is in error, and so far as such interpretation and application are in conflict with this finding, and decree, the interpretation and application are void and invalid.

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court as follows:

"That a genuine controversy exists as to the rights and obligations of plaintiffs as to payment of fees under the aforesaid statutes of the State of Indiana and the right of the defendant State Police Department to regulate the affairs of the plaintiffs as concerns plaintiff's Hargraves employees hired for security purposes.

"That plaintiff's Hargrave employees engaged and employed solely as security guards, places plaintiff's security guard division in that same class of business as those persons or corporations who operate industrial plant guard service business and those persons or corporations who provide their own personal industrial plant guard service for their own plant.

"That an industrial plant comprises the fixtures, tools, machines, merchandise and apparatus which are necessary to carry on a trade or business, or may be defined as the organized physical equipment to produce any desired result for any department or branch of art occupation, or business conducted as a means of livelihood or for profit.

"The Court further orders that plant security means the protection or personal security of the aforedefined industrial plant and its premises from any harm, including but not limited to trespassers or from persons who would injure, destroy or take the property from the aforesaid premises without right or permission of the owner thereof.

"That those employees of plaintiff Hargrave who are hired and work solely as security guards are not unlicensed employees who assist the plaintiff in that portion of his

business as a private detective, that is conducted in the State of Indiana.

"That plaintiff Hargrave furnishes such security guards for hire solely to industrial plans (sic) for plant security and not as persons engaged in the private detective business, and that such security guard service is separable and divisible from the private detective service operated by the plaintiff.

"That the application of Indiana Acts 1965, Chapter 350, Section 7, Burns' Indiana Annotated Statutes, Section 42-1223 (a) Detective License Fees, to plaintiff's Hargrave operation of a security guard service is invalid, unlawful and discriminatory in the light of Acts 1965, Chapter 162, entitled 'An Act to Amend the Detective License Law,' which amendment adds the proviso to Acts 1961, Chapter 163, Section 2, Burns' 42-1208, 'Provided, that the furnishing of a guard or guards for hire solely to industrial plants for plant security shall not be considered as private detective business.

"That the language in Acts 1961, Chapter 163, Section 2, as amended by Acts 1965, Chapter 162 'Provided, that the furnishing of a guard or guards for hire solely to industrial plants for plant security shall not be considered as private detective business' does not mean persons engaged only in the business of industrial plant security, but means that if any individual employee of a business is engaged in industrial plant or security guard service—that particular individual (guard) is not in the private detective business.

"The Court further orders that the statutes as set out in plaintiff's complaint are constitutional and valid, but that the interpretation and application of the Indiana State Police Department is in error and so far as such interpretation and application are in conflict with this finding and decree, the interpretation and application are void and invalid.

"SO ORDERED AND DECREED this 14th day of December, 1965."

Thereafter the defendants filed their Motion for New Trial alleging therein that the decision of the court was not sustained by sufficient evidence and was contrary to law. The trial court overruled the defendants' motion for new trial and that ruling is the sole assigned error on appeal.

In reviewing the evidence in the record and the decision of the trial court thereon, we are of the opinion that the Court has incorrectly construed the Acts of 1965, Ch. 350, Sec. 7, Burns' 42-1223 (a) and the Acts of 1961, Ch. 163, Sec. 2, as amended by the Acts of 1965, Ch. 162, Sec. 1, Burns' 42-1208, as applied to the facts of this case.

The two statutes in question read as follows:

"42-1208. Definitions.—As used in this act, §§ 42-1207—42-1227, unless the context clearly requires otherwise:

"(1). 'Persons' includes any individual, firm, company, association, organization, partnership or corporation.

"(2) 'Licensee' means a person licensed under this act.

"(3) 'Private detective business' shall mean and include the business of making for hire or reward investigation or investigations for the purpose of obtaining information with reference to any of the following matters: crime against the state or wrongs done or threatened; the habits, conduct, movements, whereabouts, association, transaction, reputation, or character of any persons, firm or corporation; credibility of witnesses or other persons; the location or recovery of lost or stolen property; causes, origin or responsibility for fires or accidents or injuries to real or personal property; or concerning the truth or falsity of any statement or representation; or the business of securing for hire or reward, evidence to be used for authorized investigation committee, boards of award or arbitration, or in the trial of civil or criminal cases; for the business of furnishing for hire or reward a guard or guards, or other persons to protect persons or property, or to prevent the misappropriation or concealment of goods, wares, and merchandise, money, bonds, stocks, choses in action, notes or other valuable documents or papers: Provided, That the furnishing of a guard or guards for hire solely to industrial plants for plant security shall not be considered as private detective business. (Acts 1961, Ch. 163, § 2, p. 348; 1965, Ch. 162, § 1, p. 263.)"

"42-1223a. Detective license fees.—The state police department shall charge and collect the following detective license fees:

"For applicant, wishing to engage in the private detective business in Indiana who is not a resident of Indiana, seventy-five dollars ($75.00) per annum plus five dollars

($5.00) per annum for each unlicensed employee who assists the licensee in his business as a private detective.

"For an applicant, wishing to engage in the private detective business in Indiana who is not a resident of Indiana, and who is licensed in another state, seventy-five dollars ($75.00) per annum plus five dollars ($5.00) per annum for each unlicensed employee who assists the licensee in that portion of his business as a private detective that is conducted in the state of Indiana.

"For an applicant wishing to practice as an unlicensed employee of a duly licensed private detective business, five dollars ($5.00) payable by the applicant at the time such application is made to the state police department. (Acts 1965, ch. 350, § 7, p. 1041)."

It seems to us that the crux of the problem to be decided lies in the interpretation of the words "industrial plants."

We are well aware of the definition of "industry" as it is given in Black's Law Dictionary, Fourth Edition, and from which the trial judge apparently constructed his definition of "industrial plant." Black defines "industry" as follows:

"Any department or branch of art, occupation or business, conducted as a means of livelihood or for profit; especially, one which employs much labor and capital and is a distinct branch of trade."

However, the language in the statute under consideration after defining one aspect of the private detective business as meaning and including the providing of guards or other persons to protect persons or property, or to prevent the misappropriation of goods, wares and merchandise, money, bonds, stocks, choses in action, notes or other valuable documents or papers, goes on to make a specific, single, and narrow exception to the general language quoted above and states that the furnishing of guards for hire *solely* to industrial plants for plant security, shall not be considered a private detective business.

Since the definition as set out in the statute concerning the furnishing of guard service moves from a general de-

scription to the single, constricted exclusion of furnishing industrial or plant guards, we interpret the intent of the legislature was to exclude from the class of those engaging in the private detective business, and from the payment of fees, those providing guards *solely* for hire to industrial plants for plant security.

We are, therefore, of the opinion that the words "industrial plants" are to be construed narrowly and as the common man would think of them, as was so held in the case of *Messenger Pub. Co.* v. *Board of Property Assessment, Appeals and Review of Allegheny County*, 132 A. 2d 768, 769, 183 Pa. Super. 407, wherein the court said:

> "The law can do no better than to define an 'industrial plant' as that type of establishment which the ordinary man thinks of as such."

The court in the case of *Town of Oyster Bay* v. *Forte*, 219 N. Y. S. 2d 456, 460, 34 Misc. 2d 5, stated:

> ". . . according to ordinary understanding, an industrial plant is a manufacturing establishment. Furthermore, a dictionary meaning of the word 'industrial' includes 'engaged in manufacturing industry'; and a dictionary meaning of the word 'plant' includes 'the machinery, apparatus, fixtures, etc., employed in carrying on a trade of mechanical or other industrial business'; and also a factory, workshop or apparatus complete for the manufacturing of a particular product (Websters International Dictionary, 2d Edition, Unabridged)."

The Pennsylvania Supreme Court in the case of *North Side Laundry Co.* v. *Board of Property Assessment, Appeals and Review of Allegheny County* (1951), 366 Pa. 636, 79 A. 2d 419, 421, spoke on the subjects of "industry" and "industrial plants" as follows:

> ". . . Therefore, the fact that the businesses to which plaintiff referred are sometimes generically called 'industries' is irrelevant to the issue here raised. The question is whether their establishments are industrial plants.

"The answer to that question is self-evident. By no stretch of the imagination could a bank building, a hotel, a theater or any of the other business establishments referred to by the plaintiff be considered as an industrial plant. It is true that we sometimes speak of 'the movie industry', the 'hotel industry' or 'the banking industry', but that is merely a loose use of language to convey that idea that the particular business is a sizeable one. In spite of that colloquialism, we do not speak of the buildings housing such businesses as 'industrial plants'. Plaintiff attempts to give to that phrase a legal meaning that goes far beyond anything that was contemplated by the courts when they pronounced this rule and by the legislature when it adopted it in the Act of 1933. The law can do no better than to define an industrial plant as that type of establishment which the ordinary man thinks of as such."

In view of our opinion of the legislative intent as expressed in the words 'industrial plant' we think the definition given to those words by the trial court is contrary to the principle that words used in a statute should be given their ordinary and usual meaning. *Sutto* v. *Board of Medical Registration & Examination,* (1962), 242 Ind. 556, 180 N. E. 2d 533; *Gross Income Tax Div.* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N. E. 2d 415.

Burns' Indiana Statutes, Section 1-201, concerning interpreting statutes provides:

"The construction of all statutes of this state shall be by the following rules, unless such construction be plainly repugnant to the intent of the legislature or of the context of the same statute:
"First. Words and phrases shall be given in their plain, or ordinary and usual sense. But technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."

We are of the opinion that the ordinary man would understand an industrial plant to be any factory, business or concern which is engaged primarily in the manufacture or assembly of goods or the processing of raw materials, or both.

In reviewing the evidence in the record, we do not find that any evidence was introduced to support the court's definition of the words "industrial plants" and we are of the opinion that the trial court's definition is not supported by any evidence, that it is all-inclusive, and not limited to what the ordinary man would understand an industrial plant to be.

In examining the record now before us to determine whether the Appellee George E. Hargrave, d/b/a Hargrave Secret Service, furnishes security guards for hire *solely to industrial plants,* as we have construed that term, and not as persons engaged in the private detective business, as separate and distinct from guards supplied for other services, we find the following interrogatories and answers thereto:

Interrogatory Number Two propounded to the plaintiff George E. Hargrave, d/b/a Hargrave Secret Service, reads as follows:

"Interrogatory number two:

"2. Name the five most prominent customers in the State of Indiana who retain Hargrave Secret Service for the purpose of retaining security guards."

The answer given to this interrogatory was as follows:

"No. 2. Indiana University Medical Center, Ransburg Building; Eastgate Corporation; Atkinson & Company, Devington Shopping Center; National Tea Company, Warehouse; and Manger Motor Inn."

Interrogatory Number Twelve propounded to George E. Hargrave d/b/a Hargrave Secret Service, reads as follows:

"Interrogatory number twelve:

"12. If a prospective security guard customer inquired as to whether there was any difference between 'security guards', 'plant guards' and 'night watchmen' would it be the position of Hargrave Secret Service that there is a difference?

The answer given to this interrogatory was as follows:

"No. 12. No."

Interrogatory number thirty two propounded to George E. Hargrave, d/b/a Hargrave Secret Service, reads as follows:

"Interrogatory number thirty two:

"32. To what extent and in what respects does the Hargrave security guard service offer protection to customers from employee pilfering and other types of theft."

The answer given to this interrogatory was as follows:

"No. 32. Only by observation, as incident of being in *store* or plant in uniform" (our emphasis).

Interrogatory Number One, point 8, propounded to the plaintiff, Delbert C. Nugent, reads as follows:

"8. Name the customer of George E. Hargrave d/b/a Hargrave Secret Service whom you presently serve as a security guard."

The answer given to this interrogatory was as follows:

"8. Manger Motor Inn, 1530 N. Meridian St., Indpls., Ind."

Interrogatory Number One, point 9, propounded to Delbert C. Nugent, reads as follows:

"9. Name all other customers of George E. Hargrave d/b/a Hargrave Secret Service whom you have served in the past as a security guard."

The answer given this interrogatory was as follows:

"9. Sacks Bros. Loan Co., 102 W. Ohio, Indpls., Ind. Indiana Theatre, Indianapolis, Indiana, John Herron Art Museum, Indianapolis, Indiana, Service Spring Co., 735 St. Paul, Indianapolis, Ind."

Interrogatory Number One, points 24 and 25, propounded to Delbert C. Nugent read as follows:

"24. What wages do you receive in your employment as a security guard for Hargrave Secret Service?"
"25. Could you obtain similar wages as a night watchman *or plant guard?*" (our emphasis).

The answers given to these interrogatories were as follows:

"24. $1.25 per hour."

"25. It is doubtful."

In examining the evidence in the record now before us, we find that on direct examination, Mr. James Markin, general manager of the Indiana office of Hargrave Secret Service testified as follows:

"Q. Now, would you set out for us what a plant security guard does?"

"A. Well, first of all they are in there for the protection of the property and fire protection and to prevent any thefts, *and most of ours is shopping center work where we handle traffic detail*" (our emphasis).

"Q. Traffic detail?"

"A. Yes."

"Q. Direction of traffic?"

"A. Right."

"Q. What jobs, would you set out for the Court, other than the ones you placed in the interrogatories as you recall, what are your major jobs working right now?"

"A. Well, our biggest one right now is the new Greenwood Shopping Center."

"Q. What do you do there?"

"A. It's all traffic."

"Q. All traffic?"

"A. Yes."

"Q. Do you have any other shopping centers?"

"A. Yes, I have the Eastgate and Devington Shopping Center."

"Q. What do you do there?"

"A. Traffic."

"Q. Nothing else?"

"A. Well, yes, we do, we escort the people to the bank for their deposits, again try to prevent any theft from the parking lots, from cars."

"Q. Do you in fact have any warehouses or plants that you guard?"

"A. Yes, I have Service Spring Company. I have several Construction jobs at the present time."

Further along in his direct examination, Mr. Markin testified as follows:

"Q. Do you have any other type of guarding service, other than what you have already set out?"

"A. Well, I have the Marion College."

"Q. What do you do there?"

"A. It's campus police."

"Q. And what are their duties?"

"A. Well it's mostly for the parking of the cars and keeping down any fights from the students."

On cross-examination Mr. Markin testified in part as follows:

"Q. Do your guards provide a service for the purpose of and to protect persons or property or to prevent the misappropriation or concealment of goods, various merchandise, monies, bonds, stocks, choses in action, notes and other valuable documents or papers, do they do any of these things?"

"A. Yes they do."

In view of the construction which we place on the words "industrial plant" and in view of the foregoing answers to interrogatories, and the foregoing evidence adduced at the trial of the cause, we are of the opinion that the evidence does not support the trial court's finding and decision that "Plaintiff Hargraves furnishes such security guards for hire *solely to industrial plants for plant security*" (our emphasis).

It does not appear to us that the plaintiff, George E. Hargrave, d/b/a Hargrave Secret Service, produced any evidence to prove that he provided a guard service which guarded *only* industrial plants, as we construe the words "industrial plants." On the contrary, the answers to interrogatories and the evidence shows that the guards worked at shopping centers, individual stores and shops, theaters and a museum.

Having found that the evidence does not support the trial court's decision, we must reverse the decision. The decision is reversed, and the trial court is ordered to grant the defendant's motion for new trial, and to take such other steps as are not inconsistent with this opinion.

Carson, C. J., Faulconer and Prime, JJ., concur.

NOTE.—Reported in 237 N. E. 2d 269.