**UNION MUTUAL LIFE INSURANCE
COMPANY et al.**

v.

**Joseph W. EMERSON et al. and Interna-
tional Union of Elevator Con-
structors et al.**

Supreme Judicial Court of Maine.

Oct. 8, 1975.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

ARCHIBALD, Justice.

This case is before us on report pursuant to Rule 72(b), M.R.C.P.

Union Mutual Life Insurance Company (Union Mutual) sought a decision from the Board of Elevator Rules and Regulations[1] (the Board) that its home office building is an "industrial plant" and, therefore, not required to have its elevators serviced by a licensed elevator mechanic as is mandated by 26 M.R.S.A. § 439.[2]

Bradley G. Westcott is a party plaintiff and an employee of Union Mutual. Since at the time he did not have requisite experience while employed by an elevator company, he was denied the opportunity to take an examination which would qualify him for an elevator mechanic's license under the provisions of 26 M.R.S.A. § 440.[3]

The defendants are the supervising elevator inspector and the director and former director of the Bureau of Labor and Industry. The Internation Union of Elevator Constructors and certain members of the Union moved to intervene in the action and were allowed to do so in accordance with Rule 24(b), M.R.C.P.

In an administrative hearing the Board determined that Union Mutual's home office building was not an industrial plant and also that Mr. Westcott was ineligible to take the requested examination. Union Mutual and Westcott then appealed to the

Bernstein, Shur, Sawyer & Nelson by Gregory A. Tselikis, Sumner T. Bernstein, Portland, for plaintiffs.

Charles R. Larouche, S. Kirk Studstrup, Asst. Attys. Gen., Augusta, for defendants.

Ranger, McTeague & Higbee, P.A. by Patrick N. McTeague, Brunswick, for intervenors.

1. 26 M.R.S.A. § 431.

2. "No person shall service, repair, alter or install any elevator unless he is licensed as an elevator mechanic under section 440. Elevator work in industrial plants, manufacturing plants and hospitals may be performed by plant personnel who are not licensed under sections 439 to 441, provided such work is supervised by the plant engineer."

3. "The director shall issue an elevator mechanic's license to any person who makes application therefor, *provided said person has had at least 2 years experience in the service, repair, alteration or installation of elevators while employed by an elevator company* and provided said person shall satisfactorily pass the examination provided for in section 441." (Emphasis supplied.)

Superior Court pursuant to 26 M.R.S.A. § 403, seeking a reversal of the foregoing orders and a declaration that both sections 439 and 440 were invalid. By agreement of the parties the case was then reported to the Law Court.

■ The issue raised by Mr. Westcott may be rather summarily disposed of. During the pendency of this litigation, 26 M.R.S.A. § 440 was amended, effective October 1, 1975.[4] Under the amended act an applicant may qualify for the examination if in addition to the qualifications previously existing he "has had equivalent experience as defined by regulations of the board." As far as the record now discloses Mr. Westcott is presently eligible to take the examination. Since his challenge to the statute was premised on the invalidity of the provision requiring two years experience while employed by an elevator company, the issue thus raised is no longer viable.

In *Berry v. Daigle*, 322 A.2d 320, 328 (Me.1974), we held:

"[A] statute passed during the course of litigation, and which obviates the gravamen of the complaint, moots and renders unnecessary a determination of the former controversy."

*See also Shapiro Bros. Shoe Co., Inc. v. Lewiston-Auburn S.P.A.*, 320 A.2d 247 (Me.1974); *Good Will Home Association v. Erwin*, 285 A.2d 374 (Me.1971); *Cumberland Farms v. Maine Milk Comm.*, 160 Me. 389, 205 A.2d 158 (Me.1964).

The following questions remain:

(A) Is the Union Mutual office building an *industrial plant* as that term is used in 26 M.R.S.A. § 439?

(B) If the office building is not an industrial plant as defined in Section 439, does the act violate Union Mutual's right

to equal protection under either the United States or the Maine Constitutions?

### FACTS

Union Mutual occupies certain premises in Portland as its home office, out of which it conducts an insurance business which is national in scope. The building is three stories in height, has a floor area of approximately 230,000 square feet and is served by one freight and four passenger elevators.

Approximately nine hundred people are employed in the building. Additionally, substantial numbers of business invitees visit the premises on a daily basis. The elevators are in nearly constant use.

Within this structure is also a printing facility operated by Union Mutual which handles the total printing demands of the company. The mail room employs eight persons. Dining facilities are available, staffed by twenty people who serve an average of slightly less than seven hundred customers daily. Also included within the complex is a data processing service which has the second largest computer installation in Maine. Several concerns other than Union Mutual avail themselves of the computer service.

In order to maintain the structure Union Mutual employs a "plant engineer"[5] who heads a staff of forty-one persons and is responsible for all the necessary in-house maintenance and much of the work involved in the servicing and repair of numerous types of equipment, electrical and otherwise.

These essential facts appeared in testimony and by stipulation in a hearing before the Board. The Board reached the conclusion that

"Union Mutual Life Insurance Company is not an industrial plant within the meaning of Section 439. . . ."

---

4. P.L. 1975, ch. 286.

5. All parties have agreed that this person is a qualified "plant engineer" as that term is used in Section 439.

### A

Was it error by the Board to conclude in light of all of the facts that the building occupied by Union Mutual was not an "industrial plant"?

It is argued that the Legislature envisioned an industrial plant in the context of Section 439 as one that not only is highly capitalized, has a large labor force, is departmentalized, produces some kind of a product, occupies a building or buildings exclusively for business purposes but also has on its staff skilled personnel competent to maintain the plant with safety for those who occupy it.

We do not agree with the scope of this definition. If the argument advanced were to be adopted, it would seem that any general office building could in theory qualify as an industrial plant.

An elementary rule of statutory construction is that words must be given their common meaning unless the act discloses a legislative intent otherwise. *Doughty v. Maine Central Trans. Co.,* 141 Me. 124, 39 A.2d 758 (1944); *Portland Terminal Co. v. Boston and M.R.R.,* 127 Me. 428, 144 A. 390 (1929). Furthermore, we determine such intent by giving statutory language that construction which men of "common intelligence would readily ascribe" thereto. *State v. Shaw,* 343 A.2d 210, 213 (Me.1975); *State v. Davenport,* 326 A.2d 1 (Me.1974).

The term "industrial plant" has been construed in other jurisdictions as not having the broad sweep that Union Mutual would have us adopt.

"[T]he ordinary man would understand an industrial plant to be any factory, business or concern which is engaged primarily in the manufacture or assembly of goods or the processing of raw materials, or both."

*State Police Department v. Hargrave,* 142 Ind.App. 684, 693, 237 N.E.2d 269, 274 (1968). The Pennsylvania Court used the following language in defining the term industrial plant:

"By no stretch of the imagination could a bank building, a hotel, a theater or any of the other business establishments referred to by plaintiff [office building, restaurant] be considered an industrial plant. It is true that we sometimes speak of 'the movie industry', the 'hotel industry' or 'the banking industry', but that is merely a loose use of language to convey that idea that the particular business is a sizeable one. In spite of that colloquialism, we do not speak of the buildings housing such businesses as 'industrial plants.'"

*North Side Laundry Co. v. Board of Property Assess.,* 366 Pa. 636, 639, 79 A.2d 419, 421 (1951).

The record clearly indicates that the structure occupied by Union Mutual serves the primary purpose of providing office facilities so that its employees may do those things necessary in the home office of a large insurance company. We find no error in the interpretation given by the Board to the term "industrial plant."

### B

Union Mutual's attack on the constitutionality of 26 M.R.S.A. § 439 is likewise without merit.

All acts of the legislature are presumed to be constitutional and the burden of proof is on the party who asserts an infirmity. *State v. Rush,* 324 A.2d 748 (Me.1974); *Baxter v. Waterville Sewerage Dist.,* 146 Me. 211, 79 A.2d 585 (1951). A statute will not be found to be a violation of equal protection if facts may reasonably be conceived to justify it. *McGowan v. State of Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *State v. King,* 135 Me. 5, 188 A. 775 (1936). There can be no differences in the treatment of persons under law except upon

some reasonable differentiation fairly related to the object of the regulation. However, if the classification, although discriminatory, is based upon such difference, it is not a violation of equal protection. *Shapiro Bros. Shoe Co., Inc. v. Lewiston-Auburn S.P.A., supra*; *Portland Pipe Line Corp. v. Environmental Imp. Com'n*, 307 A.2d 1 (Me.1973); *Wright v. Michaud*, 160 Me. 164, 200 A.2d 543 (1964).

The classification drawn by the Legislature exempting "industrial plants, manufacturing plants and hospitals" from the provisions of Section 439 can be rationally defended. First, there is no doubt, as the parties admit, that the State has a legitimate interest in the exercise of its police power in promoting the safe maintenance and repair of elevators. Secondly, the method chosen, i. e., maintenance and repair by licensed persons, is reasonably calculated to further that interest. The Legislature could have determined that industrial and manufacturing plants are more likely to employ persons qualified to service elevators since the repair of mechanical and electrical equipment is an integral part of their operation. Moreover, it could have decided that industrial and manufacturing plants present a reduced risk of injury since they use elevators primarily for moving freight, not people. Likewise, it would not be unreasonable for the legislature to conclude that a hospital, in view of the complex type of equipment it employs, will be staffed with persons who are both safety conscious and technically competent.

We may also assume that the Legislature had an awareness of the great number of elevators to be found in stores, hotels, and office buildings throughout the State, of varying sizes and with varying types of supportive personnel. The common denominator of these establishments is the use of the elevators therein by the general public, the legislative concern being that such use be as safe as possible. It accomplished this purpose by requiring that the servicing and repair of such elevators be done only by persons found qualified to do so by their ability to pass an examination. If discrimination in some degree results, such discrimination is nonetheless constitutionally tolerable.

Finally, Union Mutual contends that if its building is not an industrial plant the statute suffers from "under inclusion" since in fact a maintenance staff equal in size and expertise to that of any industrial plant in the State is employed in the maintenance and mechanical operation of this building. Where, as here, the classification has some reasonable basis, it does not violate the equal protection clause of either the United States or Maine Constitutions merely because it is not made with mathematical nicety, or because in practice it results in some inequality. *Morey v. Doud*, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); *Atl. & Pac. Tea Co. v. Grosjean*, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193 (1937); *Ozan Lumber Co. v. Union County Bank*, 207 U.S. 251, 28 S.Ct. 89, 52 L.Ed. 195 (1907).

In *Ace Tire Co., Inc. v. Municipal Officers of Waterville*, 302 A.2d 90, 95 (Me. 1973), we held:

"If a statute is within the legitimate range of the police power, has a fair tendency to accomplish the end proposed, is not unjustly discriminative, and does not destroy nor despoil a particular class, courts should not declare it unreasonable merely because they consider it impolitic or because it will operate harshly upon some individuals. The necessity for the statute and the manner of its enforcement are fundamentally legislative, not judicial, questions. . . . "

The entry is:

Remanded to the Superior Court for further proceedings consistent with this opinion.

POMEROY, J., did not sit.

All Justices concurring.