## NATIONAL HEARING AID CENTERS, INC.

### v.

**David E. SMITH, Commissioner, Department of Health and Welfare of the State of Maine.**

Supreme Judicial Court of Maine.

July 27, 1977.

458

Bernstein, Shur, Sawyer & Nelson by Eric F. Saunders, Gregory A. Tselikis, Portland, for plaintiff.

Michael A. Feldman, James Eastman Smith, Asst. Attys. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

National Hearing Aid Centers, Inc., filed a complaint in Superior Court which attacked the constitutionality of certain provisions contained within P.L. 1975, ch. 463, *subsequently codified* in 32 M.R.S.A. § 1658 *et seq.*, effective October 1, 1975. The defendant is the Commissioner of the Department of Health and Welfare of the State of Maine, the agency charged with enforcement of the challenged statute, who moved to dismiss the complaint pursuant to Rule 12(b)(6), M.R.C.P., for "failure to state a claim upon which relief could be granted". Following a hearing on both the complaint and the motion to dismiss, the Justice below ordered the action dismissed. The reasons listed for this ruling were that the complaint fails "to allege a justiciable controversy" and also "fails to show that any of the events and conditions it mentions have invaded or threaten to invade any legally *protected* interest of the plaintiff." The plaintiff has appealed.

1. Me. Const. art. 1, § 1; U.S.Const. amend. XI.

We sustain the appeal and remand for entry of judgment consistent with this opinion.

## JUSTICIABILITY

Although the plaintiff brought this action under Maine's Declaratory Judgments Act, 14 M.R.S.A. § 5951 *et seq.*, it was not thus excused from properly establishing a justiciable controversy.

"Our declaratory judgment statute, although worded in general terms, is operative only in cases where a genuine controversy exists. The existence of a controversy is essential in any case, for otherwise this Court would be merely giving an advisory opinion without authority of law."

*Lund ex rel. Wilbur v. Pratt*, 308 A.2d 554, 559 (Me.1973). *See also Berry v. Daigle*, 322 A.2d 320, 325 (Me.1974); *cf. Hazzard v. Westview Golf Club, Inc.*, 217 A.2d 217, 224 (Me.1966); *Drummond v. Inhabitants of Town of Manchester*, 161 Me. 376, 212 A.2d 701 (1965).

In determining justiciability we must ascertain whether the complaint alleged a claim of right justifying relief and whether a sufficiently substantial interest is asserted to warrant judicial protection. *Berry v. Daigle, supra* at 326; *Jones v. Maine State Highway Commission*, 238 A.2d 226, 229 (Me.1968). The claim asserted is the right to conduct business freely without undue legislative interference. We have previously recognized the constitutional guarantee[1] against unjustifiable impairment of one's property rights.

"A constitutional guarantee protects one's property rights not only from confiscation by legislative acts but also from an unjustifiable impairment of those rights. A deprivation of a person's property, within the meaning of this constitutional guarantee, may take place by destroying its value, restricting its profitable use or imposing such conditions as to

the use of it that seriously impairs its value."

*State v. Union Oil Co. of Maine,* 151 Me. 438, 446–47, 120 A.2d 708, 712 (1956).

In support of this claim of right plaintiff alleged that it is a Maine corporation doing business within the State and, therefore, subject to the provisions of the statute. Generally speaking, those persons who are engaged in a business directly affected by a statute are considered to have a sufficient interest to create a justiciable issue when contesting that statute's validity. *Portland Pipe Line Corp. v. Environmental Improvement Comm.,* 307 A.2d 1 (Me.1973); *Hoagland v. Bibb,* 12 Ill.App.2d 298, 139 N.E.2d 417, 420 (1957); *see Ace Tire Co. v. Municipal Officers of Waterville,* 302 A.2d 90 (Me.1973); 174 A.L.R. 558.

Moreover, plaintiff alleges that it "will suffer immediate and irreparable harm upon the effective date of the Act." Although the complaint does not allege in nonconclusory form the specific injury that will result, the complaint cannot be fatally defective on that basis alone. *See* Field, McKusick & Wroth, Maine Civil Practice, § 12.11 (2d ed. 1970). A complaint is sufficient to withstand a 12(b)(6) motion to dismiss if from a liberal construction of the pleadings and possible amendments thereto, the court can determine that a plaintiff can prove a set of facts to support his claim. *Nelson v. Maine Times,* 373 A.2d 1221 (Me. opinion June 3, 1977); *Ace Ambulance Service, Inc. v. City of Augusta,* 337 A.2d 661, 662 (Me.1975); *Richards v. Ellis,* 233 A.2d 37, 38 (Me.1967).

We conclude that plaintiff's complaint alleges sufficient interest to give rise to standing. Assuming proof of the alleged facts, as a hearing aid dealer the plaintiff corporation is in the business that the challenged statute licenses and regulates.

The commencement of this action for a declaratory judgment before the effective date of the statute poses no problem. The statute is certain to become effective. It is to be presumed that the Department of Health and Welfare will take steps to enforce the provisions of the statute. The issue raised is ripe for decision. *Maine Sugar Industries, Inc. v. Maine Indus. Bldg. A.,* 264 A.2d 1, 5 (Me.1970); *Hoagland v. Bibb, supra,* 12 Ill.App.2d 298, 139 N.E.2d at 420; *Department of Financial Institutions v. General Finance Corp.,* 227 Ind. 373, 86 N.E.2d 444, 446 (1949); *Acme Finance Corp. v. Huse,* 192 Wash. 96, 73 P.2d 341 (1937).

It is apparent that a sufficiently justiciable claim was pleaded and that the Justice erred in dismissing the action. The plaintiff sought protection from an allegedly unreasonable exercise of the State's police power, buttressed by the assertion of sufficient interest in the plaintiff as one engaged in the business regulated and licensed under the challenged statute. All the elements were present to give rise to a right to an adjudication of the claim presented.

## CONSTITUTIONALITY

Having determined that the Court below improperly dismissed the action, we normally would remand the case for further proceedings. However, since the case comes before us with a complete record, we believe this is an appropriate time to entertain this claim for declaratory relief as an original matter. *Berry v. Daigle,* 322 A.2d 320, 324 (Me.1974). By remanding to the Superior Court we could reasonably expect the issue of constitutionality to be immediately referred to us for decision. Therefore, we now reach the question of the statute's constitutionality.

32 M.R.S.A. § 1658–B provides:

"At the time of purchase of one or more hearing aids, the seller-licensee may demand and accept no more than 50% of the purchase price. Not less than 20 days nor more than 35 days after the purchase of one or more hearing aids, the seller-licensee shall make personal contact with the purchaser and provide, free of charge, any service, fitting or repair that may be necessary for the beneficial and comfortable use of the hearing aid. The purchaser, during this trial period, may cancel

the transaction by notifying the seller-licensee on or before the day of personal service contact and shall have the right to a refund. If at the time the seller-licensee makes personal contact with the purchaser, the purchaser in writing expresses his satisfaction with the hearing aid, then the balance of the purchase price is due and payable to the seller-licensee. If service or repair of the hearing aid is necessary, there shall be further trial period of the same duration, with the same right of cancellation."

As we turn to consider the constitutionality of § 1658–B, we are guided by certain well established precepts. The legislature, in the exercise of the police power of the State, does not violate substantive due process if its exercise of that power is reasonable. *State v. Rush,* 324 A.2d 748, 752 (Me.1974); *West Coast Hotel v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Nebbia v. People,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

"Too much significance cannot be given to the word 'reasonable' in considering the scope of the police power in a constitutional sense, for the test used to determine the constitutionality of the means employed by the legislature is to inquire whether the restrictions it imposes on rights secured to individuals by the Bill of Rights are unreasonable, and not whether it imposes restrictions on such rights. . . ."

*Jordan v. Gaines,* 136 Me. 291, 296, 8 A.2d 585, 587–88 (1939).

Reasonableness in the exercise of the State's police power requires that the purpose of the enactment be in the interest of the public welfare and that the methods utilized bear a rational relationship to the intended goals.[2] *State v. Rush, supra* at 753. The reasonableness of a legislative enactment, however, is presumed. *United States v. Carolene Products Co.,* 304 U.S. 144, 152, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); *Union Mutual Life Insurance Co. v. Emerson,* 345 A.2d 504, 507 (Me.1975).

It is the burden of the person challenging a statute to demonstrate the lack of any state of facts supporting the need for the challenged enactment, and thus demonstrate its unreasonableness. The State has no initial duty to come forward with a justification of its finding that an evil exists, which the statute is designed to correct. As we said in *Union Mutual Life Insurance Co. v. Emerson, supra* at 507:

"All acts of the legislature are presumed to be constitutional and the burden of proof is on the party who asserts an infirmity."

The nonexistence of a statement of purpose within the Act is not in itself determinative of the issue, as the plaintiff suggests. The question that we consider is whether any state of facts either known, or which can reasonably be assumed, lends support to the legislative action. *Union Mutual Life Insurance Co. v. Emerson, supra; State v. King,* 135 Me. 5, 188 A. 775 (1936). We can easily assume several reasonable goals which could motivate the legislature in enacting the challenged Act,[3] namely:

---

2. A different standard for testing the constitutionality of the statute would be applied if the interest invaded were a "fundamental interest." To rise to the level of a "fundamental interest" a right must be explicitly or implicitly guaranteed by the Constitution. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 33, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16, 43 (1973). No argument has been made that the right to sell hearing aids is a fundamental constitutional right.

3. The legislative history of the enactment aids us in this task. Within the statement of fact of L.D. 1038, the originally offered bill that was rewritten and then introduced as L.D. 1907 and passed as P.L.1975, ch. 463, is the following statement of purpose:

"Section 1658–B serves a twofold purpose. First, this section guarantees any person an opportunity to test a hearing aid before incurring any obligation to purchase this expensive piece of equipment. . . .

Second, this section requires at least one service contact soon after purchase of the aid. An extra benefit of this provision will be to discourage fly-by-night licensees who make a sale and disappear, leaving the purchaser without any follow-up service or repair contact."

1. To deter unconscionable sales of hearing aids to persons who will receive no benefit from the devices.

2. To insure proper service of hearing aids, a device that is largely owned by persons who tend to be elderly, less mobile, and less capable of acquiring necessary service.

3. To discourage "fly-by-night" salesmen who make a sale and are never seen again.

Plaintiff next appears to rely upon the alleged inappropriateness of the methods chosen by the Legislature to achieve the purpose of § 1658–B. The means adopted by the Legislature, however, are sufficiently appropriate if reasonable. *Inhabitants, Town of Boothbay v. National Adv. Co.,* 347 A.2d 419, 422 (Me.1975); *State v. Rush, supra* at 752.

▮ In order to withstand the test of reasonableness the regulatory means must bear a rational relationship to the evil sought to be corrected. *Inhabitants, Town of Boothbay v. National Adv. Co., supra; Buck v. Kilgore,* 298 A.2d 107, 110 (Me. 1972). It is not necessary that the methods adopted by the legislature be the best or wisest choice. No matter how much the court might have preferred some other procedure, if the measure is reasonably appropriate to accomplish the intended purpose we must give it effect. *Ferguson v. Skrupa,* 372 U.S. 726, 729–30, 83 S.Ct. 1028, 1030–31, 10 L.Ed.2d 93, 96–97 (1963). Debatable questions regarding the appropriateness of enactments should be resolved in the legislature, not in the courts. *E.g., Sproles v. Binford,* 286 U.S. 374, 388, 52 S.Ct. 581, 585, 76 L.Ed. 1167 (1932); *People v. Griswold,* 213 N.Y. 92, 106 N.E. 929 (1914).

▮ We do not believe the means chosen by the Legislature are inappropriate to the ends sought to be accomplished by § 1658–B. A trial period will enable purchasers to become sufficiently adapted to the hearing aid to determine whether it will prove to be beneficial. The prohibition against demanding or accepting more than 50% of the purchase price at the time of the sale will necessarily motivate sellers to service the hearing aid during the trial period in order that the purchaser will decide to retain the device and complete the payment. Moreover, the record discloses a relatively large profit margin, which is attributed to the "free" service provided on the hearing aids after purchase. The initial 50% payment in the usual case would cover the cost of the hearing aid and leave a substantial profit. It would not be entirely inappropriate for the Legislature to consider the subsequent 50% payment attributable to service and not payable until the purchaser is satisfied with the device or the service rendered during the trial period.

▮ We conclude that § 1658–B, having met the test of reasonableness, is a proper exercise of the State's police power. It is intended to benefit the public welfare and the methods adopted bear a rational relationship to that goal. Since the statute is a proper exercise of the State's police power, any resulting loss to a business or necessity to change business practices does not represent a taking that necessitates just compensation. *Shapiro Bros. Shoe Co. v. Lewiston-Auburn S.P.A.,* 320 A.2d 247, 254 (Me. 1974). *See also North Dakota Pharmacy Board v. Snyder's Stores,* 414 U.S. 156, 164–67, 94 S.Ct. 407, 412–14, 38 L.Ed.2d 379 (1973); *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 594–95, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962). Freedom to contract is itself necessarily subject to reasonable police power measures intended to promote and preserve the welfare of citizens. *Shapiro Bros. Shoe Co. v. Lewiston-Auburn S.P.A., supra* at 255.

▮ Plaintiff also argues that § 1658–C(4)(D)[4] is unconstitutional. This section

4. "The notice shall state that the purchaser may cancel the transaction if he consults an audiologist or a physician with specialized training in the field of otolaryngology who in writing states that the hearing aid is not advisable and in writing specifies the audiological or medical reason or both therefor. If the purchaser cancels a transaction pursuant to this paragraph, the seller-licensee shall within 60 days of the notice of the cancellation and the

does not limit the time[5] in which a purchaser may cancel the transaction if an audiologist or otolaryngologist states in writing that the hearing aid is not advisable and lists the audiological or medical reasons therefor. It is the plaintiff's contention that since a hearing aid dealer has no opportunity to rebut such an opinion, the statute creates an "irrebuttable presumption" and is, therefore, a denial of due process.

In support of this argument appellant cites *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

We find these cases inappropriate as supporting authority for the appellant's position.

In *Stanley* the Supreme Court, although recognizing that due process does not mandate a hearing in every conceivable case where government action impairs a private interest, held that a father of illegitimate children had such a fundamental and private interest in these children that due process would be violated if he were deprived of that right without a hearing where appropriate issues could be litigated.

In *Bell* the Supreme Court deemed that a driver's license was such an important interest of a licensee that State action resulting in the loss of that license without hearing was deemed violative of due process.[6]

*Carrington* involved a state statute that deprived a citizen of the right to vote in the place of his residence only because he acquired such residence while serving in the military forces of the United States. The Supreme Court held that the state could not deprive a citizen of such a fundamental right without affording all the protections that due process requires.

Each of these cases, it should be noted, involved fundamental rights of citizens which were directly affected by state action. § 1658–C(4)(D) does not require the state to take any action in the event that a purchaser should cancel the transaction. Additionally, we have already determined that the Legislature had a rational basis for enacting the statute and that its police powers thus exercised outweighed any private interests that might be affected thereby.

We have considered other points raised by the appeal which we do not deem worthy of further discussion.

The entry is:

Appeal sustained. The case is remanded to the Superior Court for entry of a judgment declaring the challenged statute to be constitutional.

All Justices concurring.

---

return by the purchaser of the hearing aid or aids refund to the purchaser the amount paid less 10% of the purchase price of one hearing aid and less the reasonable price of the ear mold or molds."

**5.** The following has been stipulated: "[T]he State agency charged with the responsibility for administering Maine's Hearing Aid Dealers and Fitters Act, interpreted Section 1658–C(4)D of the Act (Tit. 32 M.R.S.A.) so as to require that cancellation upon a written statement by an audiologist or physician will be effective only if done within 70 days of the date of purchase of the hearing aid(s)." As the agency thus construed the statute, the time in which the transaction may be cancelled cannot

be said to be unreasonable when scrutinized in the context of a 12(b)(6) motion and, therefore, is not constitutionally defective. This is consistent with the well established doctrine that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . ." *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *Beal v. Doe*, —— U.S. ——, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977).

**6.** *See Dixon v. Love*, —— U.S. ——, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977).