

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

August 13, 1984

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

01 Texas, Suite 700
Juston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable T. R. Bandy
Nueces County Attorney
Courthouse
Corpus Christi, Texas  78401

Opinion No. JM-189

Re: Whether an area to be developed for tourist purposes within its extraterritorial jurisdiction may be designated by a city as an industrial district

Dear Mr. Bandy:

You advise that certain areas along Mustang Island in Nueces County are being extensively developed for tourist-related purposes (through the construction of hotels, condominiums, vacation home subdivisions, and recreation facilities). You ask:

> May the governing body of a city designate as an industrial district under the Municipal Annexation Act certain areas within its extraterritorial jurisdiction which it determines are primarily utilized for the tourist industry?

The Municipal Annexation Act, article 970a, V.T.C.S., was enacted in 1963. See Acts 1963, 58th Leg., ch. 160, at 447. Section 5 thereof states in pertinent part:

> Sec. 5. The governing body of any city shall have the right, power, and authority to designate any part of the area located in its extraterritorial jurisdiction as an industrial district, as the term is customarily used, and to treat with such area from time to time as such governing body may deem to be in the best interest of the city. Included in such rights and powers of the governing body of any city is the permissive right and power to enter into contracts or agreements with the owner or owners of land in such industrial district to guarantee the continuation of the extraterritorial status of such district, and its immunity from annexation by the city for a period of time not to exceed seven (7) years, and upon such other terms and

considerations as the parties might deem
appropriate . . . . (Emphasis added).

The term "industrial district" is not defined by article 970a, but is
to be understood "as the term is customarily used."

In Calvert v. Austin Laundry and Dry Cleaning Co., 365 S.W.2d 232
(Tex. Civ. App. - Austin 1963, writ ref'd n.r.e.), the meaning of the
undefined term "industrial operations," as used in a taxing statute,
was at issue. Declaring that the word "industrial" has a meaning of
its own, and that the legislature is presumed to have used the word in
the sense ordinarily understood, the court held that the operations of
laundry and dry cleaning plants were "industrial operations." The
court relied upon North Side Laundry Co. v. Board of Property
Assessment, Appeals and Review, 79 A.2d 419 (Pa. 1951), which held a
commercial laundry to be an "industrial plant" within the meaning of a
Pennsylvania taxing statute. Cf. State ex rel. Keystone Laundry and
Dry Cleaners, Inc. v. McDonnell, 426 S.W.2d 11 (Mo. 1968).

The Pennsylvania Supreme Court in the North Side Laundry case,
responding to an argument that the Pennsylvania statute as construed
in a prior case unconstitutionally discriminated against a laundry
because other "service industries" were not equally taxed, explained:

> [T]he fact that the businesses to which plaintiff
> referred are sometimes generically called
> 'industries' is irrelevant to the issue here
> raised. The question is whether their establish-
> ments are industrial plants.
>
> The answer to that question is self-evident.
> By no stretch of the imagination could a bank
> building, a hotel, a theater or any of the other
> business establishments referred to by plaintiff
> be considered ar industrial plant. It is true
> that we sometimes speak of 'the movie industry',
> 'the hotel industry' or 'the banking industry',
> but that is merely a loose use of language to
> convey that idea that the particular business is a
> sizeable one. In spite of that colloquialism, we
> do not speak of the buildings housing such
> businesses as 'industrial plants'. Plaintiff
> attempts to give to that phrase a legal meaning
> that goes far beyond anything that was
> contemplated by the Courts when they pronounced
> this rule and by the legislature when it adopted
> it in the Act of 1933. The law can do no better
> than to define an industrial plant as that type of
> establishment which the ordinary man thinks of as

such.  Certainly a commercial laundry comes within
that definition but the other businesses here
mentioned do not.

See also Union Mutual Life Insurance Co. v. Emerson, 345 A.2d 504 (Me.
1975); State Police Department v. Hargrave, 237 N.E.2d 269 (Ind. App.
1968); Attorney General Opinion MW-552 (1982).

Similarly, the question here is not whether businesses catering
to tourists might be regarded as engaged in "the tourist industry."
The question is whether an area primarily utilized for the tourist
industry can be properly regarded as an "industrial district" within
the meaning of the statute.

We do not think the legislature intended to allow the extension
of a city's powers, in the manner contemplated by section 5 of article
970a, to embrace every extraterritorial area occupied by a commercial
venture that might be considered part of some "industry" in the broad
sense.  As the Supreme Court of Maine noted in Union Mutual Life
Insurance Co., supra, where 'industrial plant" status was claimed for
the home office of an insurance company because it was highly
capitalized, had a large labor force, and other indicia:

If the argument advanced were to be adopted, it
would seem that any general office building could
in theory qualify as an industrial plant.

345 S.W.2d 507.  The Maine Court relied upon and quoted from the
Indiana case of State Police Department v. Hargrave, supra, to the
effect:

[T]he ordinary man would understand an industrial
plant to be any factory, business or concern which
is engaged primarily in the manufacture or
assembly of goods or the processing of raw
materials, or both.

We believe an "industrial district," as the term is customarily
used, is an area where industrial plants are located, as contrasted
with areas that are merely commercial in character.  If the term
"industrial" were synonymous with the term "commercial" in ordinary
usage, it would be idle for our statutes to refer to them separately.
See V.T.C.S. art. 1349 ("commercial or industrial" clubs); art.
5190.6, §2(10) ("manufacturing and industrial facilities," and
"commercial development," in addition); art. 5186 ("business and
industrial development").  Cf. V.T.C.S. art. 5190.1, §2(j)
("manufacturing or industrial enterprise"); art. 5190.2, §2(e)
("manufacturing or industrial enterprise").  Article 1011a, V.T.C.S.,
grants certain cities zoning power over land "for trade, industry,

residence, or other purpose." Distinctions between commercial zones or districts and manufacturing or industrial districts have been readily applied. City of Corpus Christi v. Jones, 144 S.W.2d 388 (Tex. Civ. App. - San Antonio 1940, writ dism'd judgmt cor.). See also City of Amarillo v. Stapf, 109 S.W.2d 258 (Tex. Civ. App. - Amarillo 1937, writ dism'd). Cf. City of Amarillo v. Stapf, 101 S.W.2d 229 (Tex. Comm'n App. 1937, opinion adopted).

In only two cases that we have found is there a suggestion that section 5 of article 970a might reach farther. See Mihailov v. City of Cedar Hill, 453 S.W.2d 18. (Tex. Civ. App. - Dallas 1970, no writ) (mobile home site development); and Fox Development Co. v. City of San Antonio, 459 S.W.2d 670 (Tex. Civ. App. - San Antonio 1970), affirmed, 468 S.W.2d 338 (Tex. 1971) (subdivision development). In the Mihailov case, supra, the court merely held that the city could not be denied an opportunity to litigate the question of extraterritorial rights under sections 4 and 5 of article 970a. In the Fox Development Co. case, supra, the Court of Civil Appeals said that because the appellant had not shown a collaterally attacked ordinance to be void, the trial court did not err in holding that the land in dispute was "within the extraterritorial jurisdiction of the City of San Antonio under Article 970a, §5." But in affirming the result of the Fox Development Co. case, the Supreme Court held that section 7 (not section 5) of article 970a was the operative section.

Three cases to which Houston Endowment, Inc. was a party concerned unimproved land, used for agricultural purposes, that was considered subject to inclusion in an industrial district. We do not believe that they represent a different view, however, because the land was acknowledged to be "far more valuable for industrial development than for any other use." City of Pasadena v. Houston Endowment, Inc., 438 S.W.2d 152, 155 (Tex. Civ. App. - Houston [14th Dist.] 1969, writ ref'd n.r.e.). [The land was within territory held by a city under articles 1183-1187, V.T.C.S., which authorize limited annexations for improving navigation along navigable streams and for establishing and maintaining wharves, docks, railway terminals, and other facilities for aiding navigation or wharves. Article 970a, V.T.C.S., does not apply to such territory, City of Houston v. Houston Endowment, Inc., 428 S.W.2d 706 (Tex. Civ. App. - Houston [1st Dist.] 1968, writ ref'd n.r.e.), but article 1187-1, V.T.C.S., allows the designation of industrial districts there in words almost identical to those of article 970a. Houston Endowment, Inc. v. City of Houston, 468 S.W.2d 540 (Tex. Civ. App. - Houston [14th Dist.] 1971, writ ref'd n.r.e.). Cf. City of Nassau Bay v. City of Webster, 600 S.W.2d 905 (Tex. Civ. App. - Houston [1st Dist.] 1980), writ ref'd n.r.e., per curiam, 608 S.W.2d 618 (Tex. 1980).]

We are of the opinion, after an examination of the statutes and cases, that the governing body of a city may not properly designate as

an industrial district under the Municipal Annexation Act an area within its extraterritorial jurisdiction which it determines is to be primarily utilized for the tourist industry.

### S U M M A R Y

The governing body of a city may not properly designate as an industrial district under the Municipal Annexation Act an area within its extraterritorial jurisdiction which it determines is to be primarily utilized for the tourist industry.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Bruce Youngblood
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
David Brooks
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton
Bruce Youngblood