Daniel O. LYNCH

v.

TOWN OF KITTERY, et al.

Supreme Judicial Court of Maine.

Argued March 6, 1984.

Decided April 4, 1984.

Bernstein, Shur, Sawyer & Nelson, F. Paul Frinsko, Christopher L. Vaniotis (orally), Portland, for plaintiff.

McEachern & Thornhill, Duncan A. McEachern, Matthew T. Brock (orally), Kittery, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

In 1982 and again in 1983, plaintiff Daniel O. Lynch applied to the Kittery Town Council and was refused a permit to establish an automobile graveyard and junkyard on land located in Kittery. On review pursuant to M.R.Civ.P. 80B, the Superior Court (York County) reversed the Town Council's decision and ordered issuance of a junkyard permit. Defendants, the Town of Kittery and its municipal officers,[1] appeal from this decision, alleging error only in the court's conclusion that the Town Council lacked authority under 30 M.R.S.A. §§ 2451–2460 (1978) to impose conditions on the operation of junkyards that are unrelated to screening the facilities from view. On cross-appeal, plaintiff contends that the Superior Court erred in entering judgment in favor of defendants on two additional claims for money damages resulting from denial of the permit. Because we find no error in the Superior Court's decision, we affirm both judgments.

The relevant facts may be summarized as follows: Plaintiff filed his first application for an automobile graveyard and junkyard permit with the Kittery Town Council in January of 1982. Prior to that time he had received approval for the project from other local and state authorities. The state Board of Environmental Protection (BEP) issued a site location order pursuant to the provisions of 38 M.R.S.A. §§ 483 and 1304 (1978 & Supp. 1983–1984) based upon findings that plaintiff possessed the financial capacity and technical ability to meet air and water quality pollution control standards and that his development plan included adequate provisions for solid waste disposal, control of offensive odors, maintenance of "healthful" water supplies, traffic flow and parking. The BEP further concluded that the proposed junkyard would not adversely affect the uses, scenic character or natural resources of the community. The local Planning Board issued its approval after determining that plaintiff's plan satisfied all the requirements of the Kittery land use ordinance pertaining to junkyards and automobile salvage yards. Finally, the Kittery Zoning Board of Appeals granted a special exception permit for the junkyard on condition that plaintiff comply with all aspects of the BEP site location order, local ordinances and other applicable state statutes and that he submit water quality tests results to the Town Council prior to the annual hearing for renewal of his junkyard license.

Despite the existence of these prior approvals, the Town Council, acting pursuant to 30 M.R.S.A. §§ 2452 and 2454, denied plaintiff's permit application because of concerns expressed by local residents at the public hearing that the proposed junkyard would cause water pollution, increase the flow of traffic and reduce local real estate values. Plaintiff filed a complaint in Superior Court in March of 1982, seeking judicial review of the Town Council's decision. Because of delays involved in obtain-

---

1. The municipal officers, as members of the Town Council, are not proper parties to a Rule 80B review in Superior Court of their own permitting decision. *Inhabitants of Town of Boothbay Harbor v. Russell,* 410 A.2d 554, 559 (Me. 1980). We do not delete them as appellees from the caption of this case, however because they are properly named as defendants to plaintiff's other claims for relief.

ing the Council's findings of fact, the matter was not scheduled for hearing in Superior Court until January, 1983 by which time the requested permit would have expired.[2] The matter was continued without hearing until plaintiff submitted a permit application for 1983 which was then denied by the Town Council on the same grounds. In findings of fact issued in support of its decision, the Council stated:

> [T]he leakage of oil, gas and other liquids from the junk vehicles is likely to pollute the ground water as well as the surface water drainage. This would adversely [a]ffect the well water of the abutting property owners and would endanger the livestock and wildlife who drink in the area.

The Council further concluded that the proposed junkyard would increase the flow of traffic and depress local real estate values. Because the Council felt it was "without sufficient information to enable [it] to stipulate reasonable conditions so as to avoid any of the legitimate issues" raised at the public hearing, it refused to grant plaintiff a permit.

Plaintiff amended his Rule 80B complaint to seek reversal of the 1983 permit decision and added two independent claims for damages, alleging that the Council's actions constituted a taking of his property without due process of law and a conspiracy in restraint of trade by the municipal officers who reportedly continued to issue permits to another junkyard located less than 1,000 feet away from plaintiff's premises. In September, 1983, after hearing, the Superi-or Court reversed the denial of the permit but entered judgment for defendants on the damage claims. Defendants appealed and plaintiff cross-appealed, and we will discuss the issues in that order.

I

■ At the outset, we decline to dismiss defendants' appeal as moot merely because the 1983 permit which the Town Council was ordered to approve has already expired. The issue presented by defendants' appeal concerns the scope of their authority to regulate automobile graveyards and junkyards under 30 M.R.S.A. §§ 2451–2460 and, as such, retains its controversial vitality beyond the end of calendar year 1983. *Cf. Good Will Home Association v. Erwin*, 285 A.2d 374, 379–80 (Me.1971). We entertain this appeal under the recognized exception to the mootness doctrine allowing consideration of issues which may be repeatedly presented to the Superior Court, yet escape further review by this Court because of their fleeting or determinate nature. *State v. Gleason*, 404 A.2d 573, 578 (Me.1979).[3]

Although we do not consider defendants' appeal to be moot, a serious question remains as to the justiciability of the controversy concerning the Town Council's authority to regulate junkyards. In Superior Court, defendants contended that the discretionary power to apply more stringent restrictions and to impose conditions on the operation or use of junkyards pursuant to 30 M.R.S.A. § 2454(5) includes the power to *deny* a permit for reasons such as concerns

---

**2.** 30 M.R.S.A. § 2452 provides that automobile graveyard and junkyard permits "shall be valid only until the first day of the year following"— in this instance, January 1, 1983.

**3.** In *Drummond v. Inhabitants of the Town of Manchester*, 161 Me. 376, 212 A.2d 701 (1965) this Court dismissed an appeal brought in 1965 from denial of a junkyard permit on the grounds that it "came too late" since the 1964 permit, if issued, would have already expired. The Court reasoned that a decision on the merits no longer could have any effect on the 1964 permit. After noting an intervening statutory amendment, this Court observed that since

"[c]onditions change from year to year under which such permits are granted or denied by municipal officers ... [i]t would be inappropriate ... to give a purely advisory opinion with respect to a dead issue." 161 Me. at 377–78, 212 A.2d at 702. Although arguably on point, we find the opinion to be of little precedential value in light of our more recent pronouncements on the mootness doctrine and its exceptions. *See State v. Gleason*, 404 A.2d at 578, and cases cited therein. Accordingly, to the exte· t that *Drummond* conflicts with this decision, it is hereby overruled.

about noise, air and water pollution. The Superior Court rejected this contention, concluding instead that the Town Council has no discretion to deny a permit for a junkyard if its location and design satisfy all of the criteria set forth in the statute and in regulations promulgated by the Department of Transportation.[4] On appeal, defendants now concede that the Council lacked authority to *deny* plaintiff's application. Contrary to statements contained in the decision of the Superior Court, defendants contend that the language of section 2454(5) would authorize the imposition of a variety of conditions unrelated to screening requirements.

▪ In this case, however, the Town Council never sought to impose any conditions on plaintiff's proposed facility; therefore, its authority in this regard is a matter only of speculative interest and was not presented for decision by the Superior Court. We decline to issue an opinion which would be purely advisory with respect to powers that the Kittery Town Council might choose to exercise in the future. *See Connors v. International Harvester Credit Corp.*, 447 A.2d 822, 824 (Me.1982). The Superior Court's pronouncement regarding the Council's authority to impose conditions, was not essential to the court's ruling on the denial of the permit and is of no force and effect. In view of the fact that defendants do not challenge the actual judgment of the court reversing the denial of the permit, we must affirm that judgment.

## II

▪ On cross-appeal, plaintiff contends that the Superior Court erred in entering judgment for defendants on counts III and IV of the amended complaint in which he sought damages for the alleged deprivation of property and conspiracy in restraint of trade resulting from denial of his permit application. Specifically, he contends that it was error for the presiding justice to enter judgment without first taking testimony, hearing argument or receiving written memoranda on the merits of these claims. This argument overlooks the fact that it is the plaintiff who bears the burden of going forward with evidence to support the claims for relief presented in his complaint. He failed to do so in this case despite available opportunities. Plaintiff also failed to file a motion to sever the independent damage claims from his claim for relief from governmental action, as expressly provided in M.R.Civ.P. 80B(i).[5] In the absence of any such motion or any evidence in support of the claims for damages, the Superior Court had no choice but to enter judgment for defendants. We find no error in the court's decision.

The entry must be:

Judgments affirmed.

All concurring.

---

4. Section 2454 addresses the location of junkyards and protective screening by prohibiting the granting of permits for junkyards in specified locations and requiring screening in compliance with regulations promulgated by the Department of Transportation under section 2459. In the context of screening, subsection (5) of section 2454 provides:

No permit shall be granted for an automobile graveyard or junkyard that is not in conformity with the rules and regulations promulgated under section 2459; however, municipal officers ... *may* in their discretion *apply more stringent restrictions, limitations and conditions* in any permit for an automobile graveyard or junkyard adjacent to any highway. Municipal officers *may stipulate reasonable*

*conditions* which shall be attached to the permit covering the *operation, use and other related matters.* (Emphasis added).

5. Rule 80B(i), which took effect approximately six weeks before plaintiff filed his amended complaint, provides as follows:

If a claim for review of governmental action is joined with a claim alleging an *independent basis for relief* from governmental action, ... [the] party ... asserting such an independent basis for relief *shall file a motion* no later than 10 days after the filing of the complaint, requesting the court to speciːy the future course of proceedings .... (Emphasis added).