STATE of Maine

v.

MAINE STATE EMPLOYEES
ASSOCIATION et al.

Supreme Judicial Court of Maine.

Argued Sept. 2, 1987.
Decided Feb. 23, 1988.

Sandra S. Carraher (orally), Bureau of
Employee Relations, Augusta, for plaintiff.

Eric R. Nelson (orally), Roberta L. deAraujo, Maine State Employees Ass'n, Marc
P. Ayotte, Maine Labor Relations Bd., Augusta, for defendants.

Before NICHOLS, ROBERTS,
WATHEN, GLASSMAN, SCOLNIK and
CLIFFORD, JJ.

GLASSMAN, Justice.

The Maine State Employees Association
(the Union), as the certified bargaining unit
for employees employed by the State of
Maine, appeals a judgment of the Superior
Court (Kennebec County) vacating the order of the Maine Labor Relations Board
(the Board) that the State cease and desist
from failing and refusing to negotiate
about retirement benefits proposals. The
Union challenges the Superior Court's conclusion that by enactment of the retirement
law, which sets out by number employee
retirement benefits and eligibility requirements, the Legislature removed retirement
issues from the ambit of collective bargaining. We affirm the judgment.

I

In December, 1982, the State and the
Union began bargaining for collective
agreements to succeed those scheduled to
expire on June 30, 1983. During negotiations the Union proposed four new retirement benefits standards. The first two
proposals sought to amend retirement
plans for two groups of employees by creating eligibility for retirement benefits after twenty (20) years of State service, instead of after twenty-five (25) years as
then required by 5 M.R.S.A. § 1121 (Supp.
1985).[1] The third proposal sought to
change the basis of determining survival

1. References herein to the laws governing the
Maine State Retirement System are to the 1985–
86 Supplement to the Maine Revised Statutes
Annotated, on which the Board relied in making
its decision.

benefits from fixed dollar amounts set by 5 M.R.S.A. § 1124(1)(B)(1) to a rate based on the employee's average final compensation and years of State service. The final proposal was to allow the purchase of military service credits after ten (10) years of service instead of fifteen (15) years as required by 5 M.R.S.A. § 1094(13)(A). The parties held a number of bargaining sessions and then resorted to the impasse resolution procedures set forth in 26 M.R.S.A. § 979–D(2)–(4).

On December 23, 1983, the Union filed a prohibited practice complaint alleging that the State had violated 26 M.R.S.A. § 979–C(1)(A) and (E) (1973)[2] by refusing to bargain about the retirement proposals. The State answered and counterclaimed alleging that it was not obliged to bargain because the proposals were prescribed or controlled by statute and asserting that the Union had violated section 979–C(2)(B) by insisting to impasse that the State bargain

about the retirement proposals.[3] The precise issue presented to the Board was whether within the meaning of section 979–D(1)(E)(1)[4] the Union's retirement proposals were mandatory or exempt subjects of bargaining. The Board recognized that if the proposals were not mandatory subjects, the Union violated the duty to bargain by insisting on negotiating about them to the point of impasse. Alternatively, if the Union's proposals were mandatory subjects, the State violated the statutory duty by failing and refusing to negotiate about them. In determining that the Union's proposals were mandatory subjects of bargaining, the Board primarily relied on the scope of the arbitrator's authority as prescribed by the provisions of 26 M.R.S.A. § 979–D(4)(C)(3)–(4) and § 979–D(4)(D).[5] The Board reasoned that because those sections expressed the clear intent of the Act that the subject of "pensions" could be bargained to impasse, be discussed through fact finding and be an issue in interest

2. 26 M.R.S.A. §§ 979–C(1)(A) and (E) provide:
   1. The public employer, its representatives and agents are prohibited from:
   A. Interfering with, restraining or coercing employees in the exercise of rights guaranteed in section 979–B;
   . . . .
   E. Refusing to bargain collectively with the bargaining agent of its employees as required by section 979–D.

3. 26 M.R.S.A. § 979–C(2)(B) provides:
   2. State employees, State employee organizations, their agents, members and bargaining agents are prohibited from:
   . . . .
   B. Refusing to bargain with the public employer as required by section 979–D.
   The State did not seek review by the Superior Court of the Board's implicit denial of the State's counterclaim.

4. 26 M.R.S.A. § 979–D(1)(E)(1) provides in pertinent part:
   1. On or after January 1, 1975, it shall be the obligation of the public employer and the bargaining agent to bargain collectively. "Collective bargaining" means . . . their mutual obligation:
   . . . .
   E. (1) To confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession. All matters relating to the relationship between the

employer and employees shall be the subject of collective bargaining, except those matters which are prescribed or controlled by public law. Such matters appropriate for collective bargaining to the extent they are not prescribed or controlled by public law. . . .

5. 26 M.R.S.A. § 979–D(4)(C)(3) provides:
   C. In reaching a decision . . . the arbitrator shall consider the following factors:
   . . . .
   (3) The over-all compensation presently received by the employees including direct wage compensation, vacation, holidays and excused time, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received;
   (4) Such other factors not confined to the foregoing, which are normally and traditionally taken into consideration in the determination of wages, hours and working conditions through voluntary collective bargaining, mediation, fact-finding, arbitration or otherwise between the parties, in the public service or in private employment, including the average consumer price index.
   Section 979–D(4)(D) provides:
   D. With respect to controversies over salaries, pensions and insurance, the arbitrator will recommend terms of settlement and may make findings of fact. Such recommendations and findings shall be advisory and shall not be binding upon the parties. The determination of the arbitrator on all other issues shall be final and binding on the parties.

arbitration, the proposals must be mandatory subjects of bargaining within the meaning of section 979–D(1)(E)(1). Accordingly, the Board ordered the State to cease and desist from failing and refusing to negotiate about the proposals made by the Union.

Pursuant to 26 M.R.S.A. § 979–H(7) (Supp.1987) and M.R.Civ.P. 80C, the State sought review by the Superior Court of the Board's decision. The Superior Court held that all the Union's proposals related to specific numbers established in the retirement statutes and were, therefore, "prescribed or controlled by public law" within the express preclusion provision of 26 M.R.S.A. § 979–D(1)(E)(1) and were not bargainable. From the court's order vacating the decision of the Board, the Union appeals.

II

The single issue presented by this appeal is whether the Union's proposals are removed from collective bargaining because "prescribed or controlled by public law" as set forth in the statutes governing retirement. When, as here, the review of the Superior Court is confined to the record before the Board, we examine that same record to determine any issue presented on appeal.

■ In the first instance we notice that this case involves a controversy about negotiations leading to a 1983 collective bargaining agreement which has been superseded by a separate and independent collective bargaining agreement. Further, some of the involved statutes have been recodified and revised. We have previously stated that controversies which are capable of repetition and do not easily lend themselves to final judicial review as they arise may be addressed, even if moot, if the controversy continues between the parties or is highly likely to arise again. *See Lynch v. Town of Kittery,* 473 A.2d 1277, 1279 (Me.1984); *State v. Gleason,* 404 A.2d 573, 578 (Me. 1979). In this case there can be no doubt that the controversy between the State and the Union regarding the bargainability of these issues is either a continuing one or highly likely to arise again. The relatively short time in which bargaining is normally

attempted as compared to the relatively long time required for a controversy to be processed by the Board and reviewed by the court makes it unlikely that judicial review can be effected before the controversy becomes moot. Further, there is significant public interest in the resolution of the issue presented. Accordingly, the exception to the mootness rule applies.

■ We now turn to the specific four proposals of the Union. The Union's first two proposals for institutional employees engaged in prison management and for all law enforcement personnel were as follows:

(1) Institutional employees in prison management receive ½ average final compensation after completing 20 years creditable service and reaching 50 years and contribute at a rate of 7–½% of earnable compensation, and that

(2) Law enforcement employees receive ½ average final compensation after completing 20 years creditable service without an age limit and contribute at a rate of 7–½% of earnable compensation.

In its claim that negotiation of these two proposals was "prohibited or controlled by public law" the State relied on the provisions of 5 M.R.S.A. §§ 1121 and 1095. Section 1121 provides that a member of the state retirement system may retire at a reduced rate prior to 60 years of age after 25 years of creditable service or at age 60 years. § 1121(1)(A) and (3). Section 1095(1) provides for a member's contribution to retirement at 6–½% of earnable compensation "except as hereinafter provided." A percentage rate is then provided as to various types of employment. An explicit exception to a contribution to retirement by a member appears in section 1095(9), which provides:

When the State pays for the member's mandatory contribution pursuant to a collective bargaining contract, as authorized by section 1062, subsection 2, paragraph G, the percentage rate paid by the State shall be that rate determined by the actuary and approved by the board which provides the same net revenues to the Maine State Retirement System as

the applicable mandatory rate paid by the members.

The authorization to negotiate whether the State will pay the member's mandatory contribution appears in the pertinent provisions of section 1062(2)(G):

> Notwithstanding any other provision in this chapter,[6] the State may agree to provide through a collective bargaining contract ... payment for a member's mandatory contribution to the Maine State Retirement System as set forth in section 1095, in lieu of deducting the contribution from a member's compensation.

It is apparent that in considering the retirement rights, benefits and obligations of a member of the state retirement system, chapter 101 must be considered in its entirety. Sections 1121 and 1095, as applicable to and governing the Union's proposals one and two, clearly illustrate that which is and that which is not excluded from collective bargaining by the "prescribed and controlled" exception in section 979–D(1)(E)(1). Section 1121 contains a positive directive as to age and length of creditable service required before a member may retire. Section 1095 mandates the percentage of earnable compensation each member shall contribute to retirement but expressly provides that through collective bargaining negotiations the State can contract to provide payment for a member's contribution. *See State v. Maine Labor Relations Board,* 413 A.2d 510, 515 (Me.1980). Accordingly, we agree with the State that the Union's proposals one and two directed toward age and length of creditable service required before a member can retire were excepted from the duty to bargain, as is the percentage of earnable compensation to be contributed by a member as set forth in section 1095. However, whether the contribution is deducted from a member's compensation or paid by the State may be provided through a collective bargaining contract, and accordingly is not excepted from the duty to bargain. *See* sections 1095(9) and 1062(2)(G).

We apply a similar analysis to the Union's proposal number four that military service credits be available for purchase after ten (10) years of creditable service. The State claimed that 5 M.R.S.A. § 1094(13) providing for purchase after fifteen (15) years of creditable service "prohibited or controlled" this proposal and exempted it from mandatory collective bargaining. The Board noted that because paragraph 2 of section 1094(13) provided, *inter alia,* "Nothing in this paragraph may be construed to affect in any way the rights of public employees to bargain collectively for terms and conditions of employment," that "the topic of military service credits is appropriate for collective bargaining." We disagree. Paragraph 2 of section 1094(13) was inserted by P.L. 1981, ch. 217, at the same time the Legislature added subsection (9) to section 1095 and subsection G to section 1062(2), setting forth that portion of the retirement system that could be addressed in collective bargaining negotiations. Section 1094(13) not only addresses the length of service required before entitlement to purchase of military service credits, but also requires that a contribution to the retirement fund be made by each veteran for each year of military service claimed equal to the contribution by active members during that same period, as mandated by section 1095(1). It is apparent that the sentence in paragraph 2 of section 1094(13) relied on by the Board must be construed with the other provisions of that section and the other sections of chapter 101. In so doing, it becomes apparent that the only topic falling within the provisions of section 1094(13) not exempted from the duty to bargain is whether the State will pay the member's mandated contribution to the retirement fund.

Finally, we address the third and remaining Union proposal that active employee survivor benefits be based on average final compensation and years of service. The State claimed this proposal was prescribed or controlled by 5 M.R.S.A. § 1124(1)(B)(1)

---

**6.** The statutes governing the Maine State Retirement System appeared in Chapter 101, 5 M.R.S.A. §§ 1001–1181 (Supp.1985). We note that both sections 1095(9) and 1062(2)(G) were added by P.L.1981, ch. 453.

(Supp.1985). We agree. Section 1124(1)(B)(1) provides a stated monthly allowance for (a) a disabled surviving spouse, (b) a surviving spouse who has the care of a child or children, (c) a surviving child or children, (d) a surviving spouse 60 years of age or over and (e) surviving parent or parents 60 years of age or over. This monthly allowance is unrelated to either the deceased employee's years of state service or the average compensation during state service. The language is mandatory and specific without any reference to collective bargaining.

Thus we have in section 1124(1)(B)(1) a public policy decision of the Legislature recognizing that: (1) benefits to designated beneficiaries are ordinarily restricted to those persons who would most seriously be affected by the death of the employee; (2) an arbitrary figure not based on either length of service or rate of pay is appropriate because general experience discloses that some spouses, children, or parents are more seriously economically affected by the death of that employee than others, an effect that is probably in inverse relationship to the length of service and rate of earnings of that employee; (3) although not eligible for retirement, the deceased employee had made some contribution to the retirement fund.

We hold that within the meaning of 26 M.R.S.A. § 979–D(1)(E)(1) the public law as set forth in the Maine State Retirement System, 5 M.R.S.A. §§ 1001–1181, "prescribed or controlled" the issues contained in the four proposals of the Union and, therefore, the proposals were not subjects of mandatory bargaining. There is nothing in this record to reflect that by its proposals the Union sought through collective bargaining to have the State contract to pay members' contributions to the retirement fund, as authorized by 5 M.R.S.A. § 1062(2)(G). Accordingly, the Superior Court properly held that the Board erred in ordering the State to cease and desist from refusing to negotiate about the proposals of the Union.

The entry is:

Judgment affirmed.

All concurring.