## James A. HILLY

v.

## CITY OF PORTLAND et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 31, 1990.

Decided Nov. 29, 1990.

James Hilly, Portland, pro se.

David A. Louri, Corp. Counsel, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

McKUSICK, Chief Justice.

Plaintiff James Hilly appeals from the entry by the Superior Court (Cumberland County, *Alexander, J.*) of summary judgment in favor of the City of Portland declaring that the concealed firearms statute, 25 M.R.S.A. §§ 2001–2006 (1988 & Supp. 1989), is constitutional. He also appeals the affirmance in Superior Court (*Fritzsche, J.*) of the City's denial of his application for a permit to carry a concealed firearm. We find no merit in any of Hilly's contentions on appeal.

25 M.R.S.A. § 2003 sets forth in detail the requirements for obtaining a concealed firearms permit. Those requirements are mirrored in the concealed firearms permit application used by the City of Portland. In the spring of 1989 Hilly, a Portland resident and the director of the Regional Transportation System, began the application process to renew his concealed firearms permit in Portland. Having compared the Portland application to the provisions of section 2003, Hilly completed only those portions he believed were required by statute. Because of Hilly's failure to complete the form, Police Chief Michael J. Chitwood, the gun permit issuing authority in Portland, denied the application.

On May 19, 1989, Hilly filed a complaint against the City and the Portland police chief seeking review under M.R.Civ.P. 80B of the denial of his application. He joined an 80B count with a variety of independent claims for relief, including requests for 1) a declaratory judgment that 25 M.R.S.A. §§ 2001–2006 and any other state or local gun control regulation were unconstitutional or, alternatively, that the State had preempted the field of gun control and that his application was thus constructively

complete because it met the bare requirements of the statute, and 2) an injunction against the City's enforcement of its ordinance that prohibited the carrying of firearms at night. Shortly thereafter, enactment of 25 M.R.S.A. § 2011 specifically preempted the entire field of gun control. *See* P.L.1989, ch. 359 (eff. Sept. 30, 1989). Hilly then moved for leave to file a supplemental complaint under M.R.Civ.P. 15(d) asking the court to evaluate the ordinance and the City's permit procedure in light of the new preemption statute. He also moved for entry of summary judgment that the concealed firearms statute was unconstitutional, that the State had preempted the area of gun control, and that he was entitled to a permit on the basis of his application as submitted. The court denied all his motions. Finding that the challenged portions of state laws and local ordinances still in effect after the enactment of the preemption statute were consistent with article I, section 16, of the Maine Constitution, the court ordered the entry of summary judgment for the City on the constitutionality issue. Following a separate hearing on the denial of Hilly's permit application, the court affirmed the denial. He appeals all of these rulings to this court.

## I.

■ Article I, section 16, of the Maine Constitution provides that: "Every citizen has a right to keep and bear arms; and this right shall never be questioned." We have already addressed the scope of that right and have held that it is not absolute. *See State v. Brown*, 571 A.2d 816, 817 (Me. 1990). Rather, it is subject to reasonable regulation consistent with the State's police power to promote public health, welfare, safety, and morality. *Id.* at 820. The question now before us is whether requiring citizens to obtain permits to carry concealed firearms constitutes reasonable regulation. We hold that it does.

■ "Reasonableness in the exercise of the State's police power requires that the purpose of the enactment be in the interest of the public welfare and that the methods utilized bear a rational relationship to the intended goals." *National Hearing Aid Centers, Inc. v. Smith*, 376 A.2d 456, 460 (Me.1977). Recognizing the threat to public safety posed by the carrying of concealed weapons, state courts have held that statutes regulating the carrying of such weapons are constitutional. *See State v. Smoot*, 97 Or.App. 255, 258, 775 P.2d 344, 344–45 (1989); *Application of Metheney*, 391 S.E.2d 635, 637 (W.Va.1990). The same reason has led other courts to find that the regulation of weapons that are by their nature easily concealable is also reasonable. *See Carson v. State*, 241 Ga. 622, 628, 247 S.E.2d 68, 73 (1978); *Matthews v. State*, 237 Ind. 677, 686–87, 148 N.E.2d 334, 338 (1958); *State v. LaChapelle*, 234 Neb. 458, 451 N.W.2d 689, 691 (1990). Similarly, Maine's concealed firearms statute is a reasonable response to the justifiable public safety concern engendered by the carrying of concealed firearms. The permit requirements pass constitutional muster as an acceptable regulation of the individual's right to keep and bear arms.

## II.

■ On appeal Hilly also raises two procedural issues. First is his challenge to the court's denial of his motion to file a supplemental pleading asking the court to decide the impact of the newly enacted section 2011 on the City's concealed firearms permit process and on its ordinance forbidding the carrying of guns at night. The court's denial of that motion was entirely appropriate. By its terms section 2011 preempted the ordinance, and the City by affidavit had disavowed any intention to take any action in contravention of the statute. The issue Hilly was attempting to raise thus became moot, making unnecessary any further consideration by the court. *See Berry v. Daigle*, 322 A.2d 320, 328 (Me.1974).

Second, Hilly appeals the denial of his motion for summary judgment on the independent claims joined with his complaint for an 80B review of the City's action. The only one of these claims that Hilly preserved was the issue of preemption which, as previously stated, has been mooted.

Hilly filed no affidavits in support of his motion for summary judgment on the other claims. Because of his failure to present any evidentiary support for judgment on these other issues, the court did not err in denying Hilly's motion for summary judgment in that respect. *See Lynch v. Town of Kittery,* 473 A.2d 1277, 1280 (Me.1984).

### III.

■  Finally, we turn to Hilly's 80B appeal of the denial of his application for a concealed firearms permit. We review directly the agency action from which the 80B appeal is taken and do not concern ourselves with the decision of the Superior Court in its role as an intermediate appellate tribunal. *See Driscoll v. Gheewalla,* 441 A.2d 1023, 1026 (Me.1982). We reverse the agency's decision only if the record reveals that the agency "abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *Id.*

The statute sets out the procedure and requirements for obtaining a concealed firearms permit. An applicant must submit a written application answering several questions about his personal history and sign releases for the issuing authority to obtain information from governmental agencies such as mental institutions, courts, law enforcement agencies, and the military. *See* 25 M.R.S.A. § 2003(1). He must be photographed if the municipality makes the photograph an integral part of the permit. *Id.* If the applicant meets all of the requirements and has demonstrated good moral character,[1] the issuing authority will issue him a concealed firearms permit. *Id.*

■  In reviewing Hilly's application for a permit, the Portland police chief did not reach the merits of the application but acted well within his discretion in denying the application on the basis of Hilly's refusal to comply with the explicit procedural directives of the statute. Hilly's application was deficient in several ways. At the time he submitted the application, Hilly refused to be photographed, even though a Portland concealed firearms permit carries a picture of the permit holder on the permit itself. Hilly also refused to agree to take further action to aid the City in obtaining necessary information in support of his application or to sign any release required for the obtaining of information from other governmental entities. By its fair intendment the statute authorized the requirement of both a release and the agreement to give one as needed in the future,[2] and

---

1. The statute, 25 M.R.S.A. § 2003(4) (1988 & Supp.1990), provides the manner in which good moral character may be determined:

    **4. Good moral character.** The issuing authority in judging good moral character shall make its determination in writing based solely upon information recorded by governmental entities within 5 years of receipt of the application, including, but not limited to, the following matters:

    **A.** Information of record relative to incidents of abuse by the applicant of family or household members, provided pursuant to Title 19, section 770, subsection 1;

    **B.** Information of record relative to 3 or more convictions of the applicant for crimes punishable by less than one year imprisonment or one or more adjudications of the applicant for juvenile offenses involving conduct that, if committed by an adult, is punishable by less than one year imprisonment;

    **C.** Information of record indicating that the applicant has engaged in reckless or negligent conduct; or

    **D.** Information of record indicating that the applicant has been convicted of or adjudicated as having committed a violation of Title 17–A, chapter 45 or Title 22, section 2383, or adjudicated as having committed a juvenile crime that is a violation of Title 22, section 2383 or a juvenile crime that would be defined as a criminal violation under Title 17–A, chapter 45 if committed by an adult.

2. The statute, 25 M.R.S.A. § 2003(1)(E)(1) (Supp.1990), provides for the issuing of a permit to any legal resident of the City who meets the other requirements and

    **E.** Does the following:

    (1) At the request of the issuing authority, takes whatever action is required by law to allow the issuing authority to obtain from the Department of Mental Health and Mental Retardation, limited to records of patient committals to Augusta Mental Health Institute and Bangor Mental Health Institute, the courts, law enforcement agencies and the military information relevant to the following:

    (a) The ascertainment of whether the information supplied on the application or any documents made a part of the application is true and correct;

 

Hilly had no justification for refusing to sign these parts of the application. We need not address Hilly's contention that four personal history questions appearing on the Portland application but not listed in section 2003(1) were prohibited by the State's preemption of gun control. The legislature has since amended section 2003(1) so that it now requires the same questions earlier asked on the Portland application, rendering this issue moot.[3] Because Hilly failed to provide all the information required for a completed application, the police chief's denial of the application fell well within the scope of his discretionary power.

The entry is: Judgment affirmed.

All concurring.

(b) The ascertainment of whether each of the additional requirements of this section has been met; and
(c) Section 2005 [dealing with revocation of the permit or change of residence].

3. The newly added questions ask:
(l) To your knowledge, have you been the subject of an investigation by any law enforcement agency within the past 5 years regarding the alleged abuse by you of family or household members?
(m) Have you been convicted within the past 5 years of 3 or more crimes punishable by imprisonment of less than one year?

(n) Have you been adjudged within the past 5 years to have committed 3 or more juvenile offenses involving conduct that, if committed by an adult, would be punishable by imprisonment of less than one year?
(o) To your knowledge, have you engaged within the past 5 years in reckless or negligent conduct that has been the subject of an investigation by a governmental agency?
25 M.R.S.A. § 2003(1)(D)(5) (Supp.1990), enacted by P.L.1989, ch. 917, § 8 (eff. Apr. 24, 1990).