ENTERED OCT 2 4 2014

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-13-26

3/24/2014
STATE OF MAINE
Cumberland ss. Clerk's Office

MAR 24 2014

ORDER RECEIVED

JOHN KIERSTEAD,

    Plaintiff

v.

CITY OF SOUTH PORTLAND, MAINE,
and EDWARD GOOGINS,

    Defendants

This matter is before the court on Plaintiff John Kierstead's Rule 80B appeal of the decision of the Chief of Police for the City of South Portland, Edward Googins, to deny Kierstead's renewal application for a concealed firearms permit. This court held a hearing on this matter on January 28, 2014.

**Factual Background:**

On November 29, 2010, Kierstead was the perpetrator of an alleged assault at the Asia Restaurant in South Portland. (R. 20-22.) The victim of the alleged assault was at a table in the Asia Restaurant eating his food while also talking on his cell phone. (R. 21-22.) Kierstead was sitting a couple of tables over and got up to talk to the victim. (R. 21.) The victim stated that Kierstead yelled at him to shut up and Kierstead picked up the victim's water glass and dumped it over the victim's head. (R. 21-22.) According to the victim, after he alerted Kierstead that he was planning on calling the police, Kierstead also knocked the victim's cell phone out of the victim's hand. (R. 21-22.) Kierstead left

the restaurant with his wife, but his wife subsequently returned to the restaurant to apologize and tell the victim that Kierstead was having a diabetic episode. (R. 21-22.)

When interviewed by the police officer, Kierstead contended that the victim was swearing on his phone and swore at Kierstead when he told the victim to be quiet. (R. 21.) Kierstead admitted to dumping the water on the victim. (R. 21.) Kierstead attributed his actions to a diabetic episode, and the police officer agreed: "I feel that John was having a diabetic episode and that was the reason for the incident. He was spoken to and the case was cleared exceptionally." (R. 21.)

On June 13, 2012, Kierstead applied to renew his concealed weapons permit. (R. 6-18.) Sgt. Steven Webster wrote to Kierstead on November 1, 2012 stating in part:

> Permits for concealed weapons are governed by 25 M.R.S.A. § 2003. As a result of our investigation, which will be documented below, your application for Permit to Carry Concealed Firearms has been denied.
>
> ***In November 2010 you were involved in an alleged assault at a local restaurant. While no charges were filed, your actions lead me to deny your application at this time.***

(R. 3 (emphasis in the original).) The letter informed Kierstead that within 30 days of the letter, and after he spoke with Sgt. Webster, he could ask for an administrative review with the Chief of Police. (R. 3.)

On April 3, 2013, Kierstead emailed Chief Googins requesting a hearing regarding the concealed weapons permit. (R. 2.) On Tuesday, April 9th, Chief Googins and Kierstead met, and on Monday, April 15th Chief Googins emailed Kierstead stating "After meeting with you on Tuesday and going over the case file again, I am not going to be re-issuing you a concealed weapons permit. I truly hope you understand this decision which is based on the incident at the Asia Restaurant on November 29, 2010." (R. 1-2.)

2

Included in the record are also several protection from harassment complaints filed by Kierstead's neighbors in May of 2009 against Kierstead and his wife, Lorna. (R. 23-58.) Kierstead has objected to the consideration of these reports. The supplemented record includes docket sheets showing that the protection from harassment complaints against Kierstead were dismissed in June of 2009. (R. 67-72.) There are also several documents dating back to 2003 and 2004: a complaint from Kierstead's neighbor and CAD operations reports from 2003, and a commendation certificate from 2004. (R. 59, 61-66, 73.)[1]

**Standard of Review:**

When reviewing an 80B appeal of a concealed firearms permit denial, the court must determine whether the police chief's decision "constitutes an abuse of discretion or is otherwise unlawful. '[We] . . . must affirm the decision of the administrative agency, unless that decision was unlawful, arbitrary, capricious or unreasonable....'" *Hider v. Chief of Police, City of Portland*, 628 A.2d 158, 161 (Me. 1993) (quoting *Driscoll v. Gheewala*, 441 A.2d 1023, 1026 (Me. 1982) (alterations in the original)). *See also Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567 (finding that when a party challenges a decision left to the discretion of a state or local decisionmaker that party "has the burden of demonstrating that the decisionmaker abused its discretion in reaching the decision under appeal.")

To demonstrate an abuse of discretion an appellant must show "that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering

---

[1] The court notes that these records date back well outside of the five-year statutory limitation for determining good moral character, but as these documents do not appear to have formed the basis for the police chief's decision, it is immaterial that they were included in the record. *See* 25 M.R.S. § 2003(4). Also, the commendation certificate was only added to the record upon Plaintiff's motion after this case commenced.

the facts and circumstances of the particular case and the governing law." *Sager*, 2004 ME 40, ¶ 11, 845 A.2d 567. Merely showing that based on the facts a decisionmaker could have made different decisions, which the appellant or the court might have found preferable, is inadequate. *Id*. The Law Court has held that when determining whether there has been an abuse of discretion committed by a court there are three pertinent questions:

> (1) are factual findings, if any, supported by the record according to the clear error standard; (2) did the court understand the law applicable to its exercise of discretion; and (3) given all the facts and applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness.

*Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074.

**Discussion:**

There is no absolute right to bear firearms under the Maine Constitution. *See State v. Brown*, 571 A.2d 816, 818 (Me. 1990). The State is permitted to reasonably regulate the possession of firearms. *Id*. The Law Court has held that it is a reasonable regulation for the State to require permits for concealed firearms. *Hilly v. City of Portland*, 582 A.2d 1213, 1215 (Me. 1990) ("Maine's concealed firearms statute is a reasonable response to the justifiable public safety concern engendered by the carrying of concealed firearms. The permit requirements pass constitutional muster as an acceptable regulation of the individual's right to keep and bear arms.")

The procedure for obtaining a concealed handguns permit in Maine is governed by 25 M.R.S.A. § 2003. Section 2003 contains a host of requirements that an individual must meet in order to be issued a concealed weapons permit. One of the requirements is that the applicant "has demonstrated good moral character". § 2003(1). To determine

4

whether an applicant has demonstrated good moral character, § 2003(4) provides, in pertinent part, that the issuing authority shall make a written decision

> based solely upon information recorded by governmental entities within five years of receipt of the application, including, **but not limited to**, the following matters:
>
>> A. Information of record relative to incidents of abuse by the applicant of family or household members, provided pursuant to Title 19-A, section 4012, subsection 1;
>>
>> B. Information of record relative to 3 or more convictions of the applicant for crimes punishable by less than one year imprisonment or one or more adjudications of the applicant for juvenile offenses involving conduct that, if committed by an adult, is punishable by less than one year imprisonment;
>> C. Information of record indicating that the applicant has engaged in reckless or negligent conduct; or
>>
>> D. Information of record indicating that the applicant has been convicted of or adjudicated as having committed a violation of Title 17-A, chapter 45 or Title 22, section 2383, or adjudicated as having committed a juvenile crime that is a violation of Title 22, section 2383 or a juvenile crime that would be defined as a criminal violation under Title 17-A, chapter 45 if committed by an adult.

§ 2003(4)(emphasis added). As the Law Court indicated in *Hider*, a police chief is not limited in his consideration to the four factors contained in § 2003(4). 628 A.2d 158, 161.

Kierstead argues that the police department abused its discretion when it denied the concealed firearms permit to Kierstead because the alleged assault was not criminal, and the police department considered protection from harassment complaints without considering that those complaints had been dismissed.

First, simply because Kierstead was not charged or convicted of assault does not mean that the Police Chief could not consider the November 29, 2010 incident at the Asia restaurant. Section 2003(4) allows a police chief to consider "information recorded by governmental entities within five years of receipt of the application . . . ." While

5

Kierstead wants to now frame the incident as an attempt to cool down a "swearing and obnoxious" man, the police report reflects that Kierstead lost control. (Pl.'s Br. 3, R. 21.)

Kierstead's behavior at the Asia Restaurant demonstrated reckless or negligent conduct as defined by the statute.[2] Kierstead admitted to dumping water on the victim. (R. 21.) Dumping or throwing water on the victim's head or face posed a substantial risk of "bodily injury" as defined by 17-A M.R.S. § 2(5): "'bodily injury' means physical pain, physical illness or any impairment of physical condition." Kierstead either disregarded or failed to be aware of the risk that he was creating, and his behavior, when viewed in context, demonstrated a deviation from how a reasonable and prudent person would conduct himself in the same scenario. *See* 25 M.R.S.A. § 2002(11).

Furthermore, while the communications from the police department fail to state that Chief Googins came to the conclusion that the Plaintiff engaged in reckless or negligent conduct, Chief Googins did not have to come to such a conclusion in order to find that Kierstead lacked the requisite good moral character. *See Hider*, 628 A.2d 158, (finding that the police chief was not limited to considering the four issues specified in § 2003(4), and that the court did not need to decide whether the applicant's conduct was tantamount to reckless or negligent conduct.) The police chief was able to consider

---

[2] The statute provides that reckless or negligent conduct:

> means that the applicant, either consciously disregarding or failing to be aware of a risk that his conduct would cause such a result, engaged in conduct which in fact created a substantial risk of death, serious bodily injury or bodily injury to another human being and the applicant's disregard or failure to be aware of that risk, when viewed in light of the nature and purpose of the applicant's conduct and the circumstances known to him, involved a deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

25 M.R.S.A. § 2002(11).

6

Kierstead's own admission to the water dumping. (R. 21.) Obviously, a police chief would be concerned that Kierstead could approach a complete stranger in a restaurant, throw water in the stranger's face and allegedly knock away the stranger's cell phone. While the police report states that Kierstead felt he was having a diabetic episode and that his behavior was out of the ordinary, the incident reflects a lack of self-control and a strong temper. (R. 21.) It begs the question: what might happen if Kierstead loses his self-control while carrying a concealed firearm? The report of the incident is sufficient for the Police Chief to have come to the conclusion under § 2003(4) that Kierstead failed to demonstrate good moral character. *See Hider*, 628 A.2d 158 (where court affirmed police chief's decision to deny concealed weapons permit based on underlying conduct, when the Superior Court had previously vacated a denial of the permit based on charges stemming from said conduct that were no longer pending.)

The Plaintiff has cited to *Schwanda v. Bonney*, 418 A.2d 163 (Me. 1980), to support his argument that the authority cannot consider additional criteria when deciding whether or not to issue a concealed firearms permit. That case is distinguishable from this action, however, as *Schwanda* concerned state preemption of municipal regulations regarding concealed weapons, rather than statutorily mandated determinations regarding the moral character of the applicant. *Id.* There is no evidence that the authority in this action imposed additional requirements aside from those contained in § 2003. The Police Chief made his decision based upon information that he was permitted to review under § 2003(4).

In addition, simply because the Police Chief did not revoke Kierstead's concealed firearms permit at the time of the incident, does not mean that the Police Chief was

7

barred from considering the incident when it came to his attention at the time that Kierstead applied for a renewal. The fact that Kierstead possessed a concealed weapons permit may not have been considered at the time of the incident in 2010.

Kierstead's argument that the police department unfairly considered the protection from harassment complaints fails, because the police department never stated that those reports were the basis for the denial of the permit. The inclusion of the complaints is effectively irrelevant, as they were not mentioned in either the first denial letter from Sgt. Webster, or the denial email from Chief Googins. (R. 3, 1.) In addition, the police department was permitted to consider the 2009 protection from harassment complaints under § 2003(4). If the police department had stated that it relied upon those reports in its decision to deny Kierstead's permit, then the court would have to review whether a clear error was made by Chief Googins in failing to consider the dismissals of the complaints, but that is not the situation before the court.

While the Plaintiff has argued that his constitutional rights have been violated, specifically his right to bear arms and his right to due process, the Plaintiff has failed to support this argument. Kierstead's right to bear arms in Maine, is a right that is subject to regulation by the legislature. *See Brown*, 571 A.2d 816, 818; *see also Hilly*, 582 A.2d 1213, 1215. Chief Googins was applying the requirements of 25 M.R.S.A. § 2003, a statute that constitutes a reasonable regulation. *Hilly*, 582 A.2d 1213, 1215. Kierstead's due process rights were not violated. After an investigation, the police department provided two written communications explaining the denial of the permit application, and Chief Googins granted Kierstead a meeting to discuss the denial. (R. 1-3.)

8

Accordingly, the court ORDERS that the Plaintiff's appeal is **DENIED.** Chief

Googins' decision is **AFFIRMED**.

The Clerk is directed to incorporate this Order into the docket by reference

pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _March 24, 2014_

Hon. Roland A. Cole
Justice, Superior Court

Date Filed 5-9-13      CUMBERLAND      Docket No. _____ AP-13-26
                         County

Action    80B COMPLAINT


JOHN KIERSTEAD                    CITY OF SOUTH PORTLAND, MAINE
                                 EDWARD GOOGINS



                              vs.

Plaintiff's Attorney                    Defendant's Attorney

STEPHEN BITHER ESQ                         SALLY DAGGETT ESQ (BOHT)
PO BOX 6762
PORTLAND ME 04103-6762



Date of